**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Stephanie Fehrmann, Jeff Mellinger, Rachel Solak, Alexie Wise, Stephen Worthington, and Marlene Jennis, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br>vs.<br><br>General Motors LLC,<br><br>Defendant. | Case No.:<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiffs Stephanie Fehrmann, Jeff Mellinger, Rachel Solak, Alexie Wise, Stephen Worthington, and Marlene Jennis, by undersigned counsel, bring the following Class Action Complaint against General Motors LLC, and allege, on their own behalf and on behalf of all others similarly situated, as follows:

## INTRODUCTION

1. Defendant General Motors LLC ("GM" or "Defendant") sold Plaintiffs and the putative class members defective 2025 Chevrolet Traverse, 2025 GMC Acadia, 2025 Buick Enclave, 2025 Chevrolet Colorado, and 2025 GMC Canyon vehicles (the "Class Vehicles") that contain defective master brake cylinder assemblies. The defective master brake cylinder assemblies fail abruptly and without warning soon after vehicle delivery, and lead to partial or total loss of braking (the "Master Cylinder Defect" or the "Defect").

2. When the Defect manifests, the vehicle instrument cluster displays numerous warning lights, including red "Brake" warning light, and the Anti-lock Brake System (ABS) warning light, and displays "Service Brake System" message. Many owners, including

Plaintiffs, also experienced partial or total loss of braking, where the brake pedal either becomes stiff and hard to press, or sinks into the floor, which makes drivers unsafe and increases the likelihood of a vehicle collision or accident. Owners also report resorting to all manner of gimmicks to get the brakes to work, such as shutting the vehicle off and restarting, and pumping the brake pedal.

3. The Defect substantially impairs the Class Vehicles' ability to provide safe and reliable transportation and renders the vehicles unmerchantable and worth less money at the time of sale or lease.

4. Master brake cylinder assemblies are not expected replacement or maintenance parts and absent a defect should not require replacement. Nonetheless, GM failed to repair the Defect under its New Vehicle Limited Warranty within reasonable period of time. Indeed, it did not issue any bulletin to its dealers regarding the Defect, and issued only a Service Update on December 9, 2024, for the 2025 Buick Enclave vehicles only. Nor has GM issued a safety recall regarding the Defect or otherwise instructed its dealerships to perform repairs regarding the Defect irrespective whether the Class Vehicles owners and lessees experience the Defect.

5. Additionally, GM had knowledge of the common defect before selling the Class Vehicles to Plaintiffs and class members. For instance, the prior model year 2024 Chevrolet Traverse also had defective master brake cylinder assemblies where the internal cartridge seal in the eBoost Module was missing and GM issued a Service Update N242482170 acknowledging the defect that pre-dates the sale of the Class Vehicles at issue in this case. The 2024 Traverse shares the same master brake cylinders as the later model year Traverse, Enclave, and Acadia Class Vehicles.

6. GM also learned about the Defect via pre-sale testing on the Class Vehicles, early consumer complaints directly to GM and its dealerships, and from reports from

dealerships. Nonetheless, GM failed to disclose the defect to Plaintiffs or other putative class members at the time of sale or lease.

7. GM's sale of the defective Class Vehicles with the undisclosed defect and failure to repair within reasonable time constitute fraudulent concealment, breach of the express warranty, breach of the implied warranty of merchantability, violations of state consumer protection and unfair and deceptive trade practices act, and gives rise to unjust enrichment claims. To remedy GM's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages and restitution from GM.

## PARTIES

8. Plaintiff Stephanie Fehrmann ("Plaintiff Fehrmann") is, and at all times mentioned herein was, an adult individual residing in Breese, Illinois. Plaintiff Fehrmann is a citizen of Illinois.

9. Plaintiff Jeff Mellinger ("Plaintiff Mellinger") is, and at all times mentioned herein was, an adult individual residing in Ionia, Michigan. Plaintiff Mellinger is a citizen of Michigan.

10. Plaintiff Rachel Solak ("Plaintiff Solak") is, and at all times mentioned herein was, an adult individual residing in Newport, Michigan. Plaintiff Solak is a citizen of Michigan.

11. Plaintiff Alexie Wise ("Plaintiff Wise") is, and at all times mentioned herein was, an adult individual residing in Washington, Indiana. Plaintiff Wise is a citizen of Indiana.

12. Plaintiff Stephen Worthington ("Plaintiff Worthington") is, and at all times mentioned herein was, an adult individual residing in Medina, Ohio. Plaintiff Worthington is a citizen of Ohio.

13. Plaintiff Marlene Jennis ("Plaintiff Jennis") is, and at all times mentioned herein was, an adult individual residing in Sour Lake, Texas. Plaintiff Jennis is a citizen of Texas.

14. Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48243. GM's sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member is General Motors Company, a Delaware corporation with its principal place of business in Michigan. Thus, Defendant General Motors LLC is a citizen of Michigan with a principal place of business in Michigan.

15. Defendant General Motors LLC, through its various entities, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles. Defendant General Motors LLC is the warrantor and distributor of the Class Vehicles in the United States.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and GM are each citizens of different states.

17. As to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

18. Personal jurisdiction and venue are proper in this District as Defendant is registered to do business in the Commonwealth of Pennsylvania, and Defendant has appointed a registered agent in the Commonwealth of Pennsylvania. Thus, pursuant to 42 Pa. Cons. Stat. Ann. § 5301, Defendant consented to a general jurisdiction within this District. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 143 S. Ct. 2028, 216 L. Ed. 2d 815 (2023).

## THE MASTER BRAKE CYLINDER DEFECT

***The Defect***

19. The Class Vehicles suffer from a common defect in the master brake cylinder assembly (the "Master Cylinder Defect"). The master brake cylinder is a critical component of the hydraulic braking system, responsible for converting pressure applied to the brake pedal into hydraulic force that engages the brakes.

20. In the Class Vehicles, the master cylinder is defectively designed and/or manufactured. Internal seals and related components fail prematurely, allowing brake fluid to bypass or leak, which results in the loss of hydraulic pressure. This failure can occur suddenly and without warning.

21. The defect exists at the time of sale even though it often does not manifest until several weeks or months thereafter.

22. When the Master Cylinder Defect manifests, drivers experience dangerous conditions including brake pedals that feel unusually stiff or require excessive force to depress, brake pedals that sink to the floor without producing adequate braking power, substantial reduction or complete loss of braking capability, and activation of dashboard warning lights and messages such as "Brake," ABS warnings, and "Service Brake System."

23. The Master Cylinder Defect poses a severe safety risk because it directly compromises the driver's ability to slow or stop the vehicle. This substantially increases the risk of collisions, serious injury, and death.

***GM's History of Selling Earlier Model Year Vehicles with the Same Master Brake Cylinder Defect***

24. GM's knowledge of the Master Cylinder Defect in the 2025 Chevrolet Traverse and its platform siblings did not arise for the first time with the sale of these vehicles. GM has a history of equipping earlier model year with the same or substantially similar defective master brake cylinder assemblies.

25. For example, on December 9, 2024, GM issued the Service Update N242482170, acknowledging defects in the brake master cylinder assemblies installed in 2024 Chevrolet Traverse and 2025 Buick Enclave vehicles. That service update directed dealerships to inspect and, if necessary, replace the brake master cylinder because internal seals or related components could fail, causing a loss of hydraulic pressure and degraded braking performance.

26. The 2024 model year Traverse and 2025 model year Enclave subject to the 2024 Service Update share the same brake master cylinder assemblies – including the same part number – as other Class Vehicles including the 2025 model year Traverse vehicles that Plaintiffs bought and the 2025 model year Acadia vehicles.

27. The Service Update N242482170 did not appear out of thin air. Although GM did not issue the service update until December 2024, it learned about the Defect months earlier through, *inter alia,* a combination of testing, complaints from owners, and reports from the field, and then spent a significant amount of time developing a proposed repair attempt and preparing the service update before it was issued to dealerships.

28. The issuance of Service Update N242482170 demonstrates that GM was aware, prior to selling certain 2025 model year Class Vehicles, that the master brake cylinder assemblies used in these vehicles were defective, unsafe, and prone to premature failure.

29. Despite this prior knowledge, GM continued to install substantially similar master brake cylinder assemblies in the 2025 Class Vehicles and to market those vehicles as safe, reliable, and suitable for everyday use. GM concealed from consumers that these vehicles suffered from a defect that could suddenly impair braking performance and create a serious risk of collision.

30. GM's history of brake system defects, including those acknowledged in Service Update N242482170, confirms that GM knew or should have known that the Class Vehicles contained the Master Cylinder Defect. Nonetheless, GM failed to disclose or remedy the defect within reasonable period of time. Indeed, many owners complained of months-long replacement part delays whenever they sought the Defect repair:

- **May 13, 2025** (NHTSA ID NUMBER: 11660595) (2025 Traverse): "I JUST bought my car brand new 3 weeks ago. Yesterday as I was driving, my whole brake system just went out. About 6 lights came on the dash and maintenance was flashing. I got it to the nearest Chevy dealer and the Master Cylinder is bad. On A BRAND NEW CAR. A cylinder should last the lifetime of a car…not 3 weeks. The car is not drivable and I am told **the parts are back ordered until the end of July**. What if my children were in the car when this happened or if I was going 60 mph?? Unacceptable and someone needs to be aware of this!"

- **May 27, 2025** (NHTSA ID NUMBER: 11663225) (2025 Traverse): "Car has 1200 miles on it. Turned on and dash lit up with warnings. Took to dealer who confirmed the master cylinder is bad & must be replaced. Worse than that—it is back ordered and **I am currently given an estimate of July for the replacement part.** Hadn't even made the first payment on my brand new vehicle before it had to be taken in and now I am without it for an unforeseen amount of time."

- **July 22, 2025** (NHTSA ID NUMBER: 11675409) (2025 Acadia): "At approximately 4900 miles, the brake master cylinder failed on my vehicle. **It has been at the dealership for over a month awaiting parts for repair.**"

- **September 7, 2025** (NHTSA ID NUMBER: 11685561) (2025 Acadia): " … I took it in on July 9th, and then received a called a couple days later telling me that it had a bad Brake control module that they needed to order. A week later was told the part was on backorder. Two weeks later was told the part came in but it was still missing the brake master cylinder and reservoir. At that time, I was told the ETA was unknown

> and I have been calling back every week. On August 23rd I filed a complaint with GMC and have struggled to get anywhere with them. They tell me the dealer has the parts and the dealer tells me that they do not. **I still have no ETA and it has been officially 2 months without a car. I am told that it is not safe to drive.**"

31. Moreover, GM has not issued a recall regarding the Master Brake Defect.

## GM'S WARRANTY

32. Each Class Vehicle sale or lease is accompanied with GM's 3-year / 36,000-mile New Vehicle Limited Warranty.

33. GM provides the warranty booklets to Plaintiffs and class members via its dealerships. Warranty booklets are also available on GM's website. *See* https://www.chevrolet.com/owners/warranty (last visited Oct. 5, 2026).

34. The terms of GM's NVLW are contained in the warranty booklet that Plaintiffs and all class members received at the time they purchased or leased the Class Vehicles.

35. GM's warranty booklet applicable to the Class Vehicle each state that "The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise, vibrations, or other normal characteristics of the vehicle. Needed repairs will be performed using new, remanufactured, or refurbished parts" and that to obtain repairs owners must take their vehicles to a GM dealer "within the warranty period and request the needed repairs." "Reasonable time must be allowed for the dealer to perform necessary repairs."

36. Thus, GM's warranties contain contractual promises that GM made directly to Class Vehicle owners and lessees to provide for repairs that correct vehicle defects.

37. GM controls execution of all warranty repairs by its dealers, as it provides training, materials, special tools, diagnostic software, and replacement parts to its dealers, and

demands that the warranty repairs be performed in strict accordance with its repair guidelines, Service Updates, Technical Service Bulletins, and other instructions.

38. In return, GM pays its authorized dealerships a monetary compensation for such warranty repairs.

39. Therefore, GM's authorized dealers are its agents for purpose of vehicle repairs, and knowledge of a defect reported to any such dealer can be imputed to GM.

**<u>GM'S PRE-SALE KNOWLEDGE OF THE DEFECT</u>**

40. GM knew but failed to disclose the Master Brake Cylinder Defect to Plaintiffs and Class Vehicle owners.

41. As set forth above, GM learned about the Master Brake Defect via its investigation into earlier 2024 model year GM vehicles with the same defective master brake cylinder assemblies that suffer from the same Master Brake Cylinder Defect that affects the Class Vehicles in this case.

42. GM additionally became aware of the Defect through other sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to GM's network of dealers and directly to GM, aggregate warranty data compiled from GM's network of dealers, testing conducted by GM in response to consumer complaints, and repair order and parts data received by GM from GM's network of dealers.

43. Indeed, GM engages in extensive pre-sale testing including selling them to the public, including the specific brake parts at issue in this case. For instance GM engages in "durability testing" on its vehicles at its "Milford Proving Ground in Milford, Michigan" where

vehicles "are refined and validated."[1] GM touts that "[f]or 100 years, General Motors has been testing new cars and technology on a vast compound in suburban Michigan known as the Milford Proving Ground" which GM describes as "the oldest dedicated vehicle testing facility in the world."[2] According to GM, its employees "drive more than 15 million development and testing miles per year in vehicles at Milford" which "covers 4,000+ acres."[3]

44. Further, at its Milford Proving Ground, GM specifically maintains a brake testing facility and in 2024 GM opened a "new brake testing facility" that allows GM to "simulate braking in weather conditions that range from Alaska to a tropical island" and, "GM vehicles can now take up to 1,900 stops in 2½ days compared with 1,000 stops in two weeks using previous testing methods."4

45. During the pre-release process of manufacturing, engineering, and performing durability testing on the Class Vehicles – including the pre-sale testing on the Class Vehicle brakes at GM's Milford Proving Grounds – which occurred before GM began selling the Class Vehicles in 2024, GM learned that the Class Vehicles' common master brake cylinder assemblies suffer from the Master Brake Defect.

46. GM learned about the Master Brake Defect via early reports about the Class Vehicles experiencing the Master Brake Defect from GM dealerships shortly after it began shipping the Class Vehicles. These reports occurred when dealerships contacted GM with

---

[1] https://www.gm.com/company/gm-quality-standards (last visited Oct. 5, 2026); https://news.gm.com/home.detail.html/Pages/news/us/en/2024/sep/0925-mpg100-reuss.html (last visited Oct. 5, 2026).

[2] https://news.gm.com/home.detail.html/Pages/news/us/en/2024/sep/0925-mpg100-20-facts.html (last visited Oct. 5, 2026).

[3] *Id.*

[4] https://www.automotiveworld.com/news-releases/good-vibrations-coming-new-gm-brake-test-facility/ (last visited Oct. 5, 2026).

inquiries concerning warranty coverage and with technical questions regarding the Class Vehicles' master brake cylinder assemblies.

47. GM also learned about the Master Brake Defect because of the higher-than-expected number of replacement master brake cylinder assemblies ordered by GM dealerships, which alerted GM that the Class Vehicle master brake cylinder assemblies – which are not typical maintenance or replacement parts – were defective and needed replacement at significantly higher rates than non-defective master brake cylinder assemblies.

48. GM dealerships use GM OEM replacement master brake cylinder assemblies that they order directly from GM and GM maintains part sales data including records of the number of Class Vehicle master brake cylinder assemblies sold, and GM analyzes this data to identify emerging safety and quality issues. GM learned about the Defect in part by analyzing part sales data and discovering the unusually high rate of replacement master brake cylinder assemblies installed in Class Vehicles.

49. GM also knew about the Master Brake Defect because numerous consumer complaints about the Defect were made directly to GM and its dealerships. The large number of complaints, and the consistency of their descriptions alert GM to this serious Defect affecting the Class Vehicles. The full universe of complaints made directly to GM about the Master Brake Defect is information presently in the exclusive custody and control of GM and is not yet available to Plaintiffs prior to discovery. However, many Class Vehicle owners complained directly to GM and GM dealerships and service centers about the repeated master brake cylinder failures their vehicles experienced.

***The NHTSA Complaints and Online Discussions of the Defect***

50. Since GM began selling the Class Vehicles, owners have been complaining about the Master Brake Defect directly to GM and have been posting such complaints online.

51. For instance, Class Vehicle owners repeatedly complained to the National Highway Traffic Safety Administration (“NHTSA”). GM monitored the NHTSA complaints internally and learned about the Defect from the NHTSA complaint amongst other sources. Because the Class Vehicles share the same master brake cylinder assemblies, the NHTSA complaints from owners of each Class Vehicle models put GM on notice that the Class Vehicles each suffer from the same common defect. Below are representative NHTSA complaints:

- June 23, 2024 (NHTSA ID NUMBER: 11596013) (2024 Traverse): “While car was in motion a warning suddenly came onto screen stating "Brake assist problem, service asc, vehicle speed will be reduced for safety". Pedal was very hard to press, and was almost impossible to stop car with the speed less then 20 mph when the problem occurred. Dealer reports that the Master brake Cylinder needs replaced. This car has less then 500 miles on it at time of occurrence. At this time I am unaware if part is being evaluated as a safety issue. The dealer has been unable to get GM to provide a replacement part.”

- October 2, 2024 (NHTSA ID NUMBER: 11617640) (2024 Traverse): “With less than 9,000 miles driven on the vehicle, the entire brake system failed as I was driving. I have since learned that there was a faulty master brake cylinder installed when the vehicle was built. No brake fluid was getting to any of the brakes. When the incident occurred, I was able to pump the brake pedal all the way to the floor in order to get the vehicle to stop. I felt the power brakes go out, the service light started flashing on the dash, and several warnings popped up. These warnings included: "Brake System Failure", "Speed Restricted", and "Hard Braking Required". Even with hard braking it was difficult to get the vehicle to stop. I was very lucky that I was not travelling at a high rate of speed and was on a low-traffic road when the incident occurred. Had it been 2 minutes later I would've been on a major interstate and could've put my own and others' lives at risk. The vehicle has been diagnosed by the dealership I purchased it from and will be in their position for the next month while waiting on a new part.”

- December 10, 2024 (NHTSA ID NUMBER: 11629845) (2024 Traverse): “The contact owns a 2024 Chevrolet Traverse. The contact stated while driving 45 MPH and depressing the brake pedal, the message "Brake Assist Failure" was displayed. The contact was able to pull over to the side of the road. The contact stated upon turning off and restarting the vehicle, the message was no longer displayed, and the vehicle operated as needed. The contact stated while driving 25-30 MPH at the airport, the failure recurred. The contact stated that upon turning off and restarting the vehicle several times, the failure persisted. The messages "Brake Assist Failure" and "Forward Collision Not Available" were displayed, and the check engine warning light was

illuminated. The contact was able to drive 5 MPH and pulled over to a safe location. The vehicle was towed to the residence. The vehicle was then towed to the dealer, where it was diagnosed that the brake master cylinder had failed and needed to be replaced. The dealer was awaiting the parts to repair the vehicle. The vehicle was not repaired. The manufacturer was notified of the failure and a case was opened. The failure mileage was approximately 1,900."

- February 16, 2025 (NHTSA ID NUMBER: 11642985) (2024 Acadia): "When pressing brakes to start the car the pedal goes all the way to the floor with little or no resistance. It has happened three times in 3 months. Took it to GM dealer after the first two incidents and they did a software update. Took it in again after the third incident and they did nothing."

- April 5, 2025 (NHTSA ID NUMBER: 11652931) (2025 Traverse): "Purchased car Tuesday, Thursday night upon pressing the start button all power went out on car. Driving to dealership to have car looked at vehicle shutoff completely at traffic light. Vehicle restarted then two miles from dealership car had multiple warnings and brakes completely went out. Managed to get car off the road safely, currently awaiting tow."

- April 11, 2025 (NHTSA ID NUMBER: 11654074) (2025 Acadia): "I have had my 2025 GMC Acadia Denali for 1 week with 336 miles on it. When I went to start it on the evening of [XXX], I felt the brake pulse. Then the dash lite up with message to Service ESC. The brake icon was lite up red and ABS was lite up yellow color. I took my vehicle to our local Jeff Fender GMC dealership the next morning. The service tech did a brake pressure test which passed. He cleared the codes. When I went out to leave the dealership, the codes came back on. The service tech said it is NOT safe to drive because my brakes can fail at anytime. Service said they need to replace the master cylinder. With this issue, my brakes could fail & a horrible crash could occur causing injuries and/or death. Service rep told me this has happened to a new Yukon too. My husband called the dealership in Lake City, FL, where we purchased the Acadia from & spoke to a service rep. He told my husband he has seen this in Yukons, Terrains & Sierra pick up trucks. This brake issue with the master cylinder should be a recall due to the potential dangers of a horrible accident that can occur if the brakes fail."

- May 13, 2025 (NHTSA ID NUMBER: 11660595) (2025 Traverse): "I JUST bought my car brand new 3 weeks ago. Yesterday as I was driving, my whole brake system just went out. About 6 lights came on the dash and maintenance was flashing. I got it to the nearest Chevy dealer and the Master Cylinder is bad. On A BRAND NEW CAR. A cylinder should last the lifetime of a car…not 3 weeks. The car is not drivable and I am told the parts are back ordered until the end of July. What if my children were in the car when this happened or if I was going 60 mph?? Unacceptable and someone needs to be aware of this!"

- May 27, 2025 (NHTSA ID NUMBER: 11663225) (2025 Traverse): "Car has 1200 miles on it. Turned on and dash lit up with warnings. Took to dealer who confirmed the master cylinder is bad & must be replaced. Worse than that—it is back ordered and I am currently given an estimate of July for the replacement part. Hadn't even made the first payment on my brand new vehicle before it had to be taken in and now I am without it for an unforeseen amount of time."

- June 19, 2025 (NHTSA ID NUMBER: 11667901) (2025 Acadia): "The ESC, ABS, and Traction Control, Yellow warning lights, BRAKE, Red Warning light. Diagnosis is ABS, module, and master brake cylinder bad 2025 GMC Acadia Denali, 1150 miles. No parts available because these are all needing work! People are having near misses and collisions due to this problem! Put a stop production order until these are fixed!"

- June 24, 2025 (NHTSA ID Number 11668987) (2025 Traverse): "On June 10th I drove my vehicle to work downtown Cleveland (no issues). Got home around 1 pm and had to leave at 3:30 to get my daughter from school. As I got in my vehicle I started to go in reverse and received all of those notifications and my brakes went completely out and I had to slam it to the floor to stop it was so scary and I thank god I wasn't on the road or with my children!! I called the dealership the next day and they finally had my vehicle towed on the 12th of June. Once my car was there "the error messages disappeared and it was fine". I did not feel safe taking the car back so they kept it another day and had the technician driving it around, still nothing until he washed the vehicle then it happened. After doing a ton of my own research others have stated the 2025 traverse has the same issue and they had to get the master cylinder replaced so I mentioned this to them at the dealership. The lady called me back and said I was right. They put me through Hertz for a rental and I found out today they didn't even order the part until the 20th. This is very frightening and should be a recall immediately! I can't imagine if I was driving 70 mph and this happened I could've died or killed someone else!"

- June 24, 2025 (NHTSA ID NUMBER: 11668988) (2025 Acadia): "After having my 2025 GMC Acadia Elevation for 2 weeks, I turned it on and six lights on the dash lit up. ESC, ABS, Tractions Control and more. I was leaving a store at the time this happened and drove home. Also, my cruise control would no longer work. Took my Acadia to the dealership the following business day to be serviced, only to be told a week later that the master brake cylinder needed replaced. This part of course was on back order. My new part arrived two weeks later, only to discover that two additional one-time parts (seal and reservoir) are now needed. These parts are also on back order with an estimated ship date of mid to late July."

- June 25, 2025 (NHTSA ID Number 11669281) (2025 Traverse): "Master cylinder failure per Chevy shop. Dash board ESC alert with immediate service needed. No obvious symptoms prior to warning dash alerts. part is delayed no ETA"

- June 26, 2025 (NHTSA ID Number 11669478) (2025 Traverse): "While driving the vehicle a brake assist and service ESC fault occurred. It flashed on the dashboard. The issue just appeared with no prior warning. This made the brakes very difficult to engage and control. I was driving 50+ MPH down a congested road and almost collided with vehicles in front of me stopping for a traffic light. I had my wife and two small children in the vehicle with me. I made it to a place of business and turned the vehicle off. It would not restart and had no power. It was towed to the dealership. The issue has occurred on two other occasions. Once about a month prior. The vehicle was able to restart and the fault was gone. The first time this happened was right after I purchased the vehicle. It had 500 miles on it. It was serviced by the dealership who replaced the master brake cylinder. The vehicle does not feel safe to drive due to the issue. You loose control of the brakes with no prior warning."

- June 26, 2025 (NHTSA ID Number 11669400) (2025 Traverse): "The contact owns a 2025 Chevrolet Traverse. The contact stated that while driving 70 MPH during a road trip, the ABS warning light illuminated upon depressing the brake pedal. The contact stated that the messages "Control Module Performance Warning" and "Forward Collision Alert System" were displayed. The contact continued driving, and the brake pedal and steering wheel became stiff. The vehicle was pulled over to the side of the road and restarted. The message "Do Not Drive the Vehicle over 62 MPH" was displayed. The vehicle was taken to a dealer, where it was partially diagnosed that the brake plunger motor temperature was too high, and there was a braking performance failure. The dealer reset unknown sensors, and the contact and his family drove to the destination. The vehicle was taken to another dealer, where it was diagnosed that the brake master cylinder had failed and needed to be replaced. The vehicle was not repaired. The manufacturer was notified of the failure. The failure mileage was 913."

- June 30, 2025 (NHTSA ID Number 11670205) (2025 Traverse): "Had lights on my dashboard when I turned it on the morning of 6/1/25. Brake light, traction, ABS, and forward collision. Cruise control also stopped working. Brake module needs to be replaced."

- July 2, 2025 (NHTSA ID NUMBER: 11670865) (2025 Acadia): "After having vehicle for one month, a "service brake assist" message was displayed on instrument cluster. Vehicle was taken to dealership for service and was told the master brake cylinder needed to be replaced and will take a while due to a nationwide shortage on the part."

- July 9, 2025 (NHTSA ID NUMBER: 11672338) (2025 Acadia): "ABS, EBCM, Traction Control and brake lights on."

- July 9, 2025 (NHTSA ID NUMBER: 11672281) (2025 Acadia): “Car driven off the lot 06/14/2025 On Sunday 07/06/25 (21 days from purchase) while driving home from a 30 minutes away from home trip with 3 young children with me, the car gave multiple alerts and service warnings. "Service Brake Assist" and "Service ECS" Lights / Symbols related to the following were also displayed: Traction Control System (TCS)/ Electronic Control Stability Light, Anti-lock Brakey System (ABS); Brake System Warning Light, Forward Collision Alert and BREAK light I stopped the car immediately and pulled to the side of the road. After restarting vehicle, lights were still displayed and service alerts still on. Power steering was very diminished and the breaks were struggle to break. Acceleration was also impacted and every time I breaked it appeared as though the car was trying to accelerate. I was able to drive the car home slowly following back roads. On Monday 07/07/25 I called the dealership and arranged a tow to their facility. On Tuesday 07/08/25 after multiple "unavailable to take your calls" I was finally able to connect with a service technician who indicated the break master cylinder needed to be replaced. I was not given an ETA on the completion of this repair. I have owned the car for 21 days. It has 1073 miles on it!!! I have 3 young children! The original route home was via a very heavy interstate! What if the brakes failed me while driving an interstate! I praise God I was able to get home safely with my children”

- July 14, 2025 (NHTSA ID Number 11673290) (2025 Traverse): “On 6/18/25 vehicle started displaying "Service braking system" and "service electronic stability control" warnings along with warning chimes and various malfunction indicator lights. Malfunction Indicator Lights included service brakes, ABS, and ESC. Vehicle taken to dealer service department on 6/18. Service department has replaced the battery and brake assist module, but the problem persists. GM says to replace the brake master cylinder, but no parts are available. Dealer has impounded the car as a safety concern and has provided a loaner vehicle. Because this involves the service brakes it is a safety concern.”

- July 15, 2025 (NHTSA ID NUMBER: 11673570) (2025 Acadia): “Multiple brake warning lights came on while driving vehicle”

- July 22, 2025 (NHTSA ID Number 11675292) (2025 Traverse): “Purchased new 25 Traverse. Driving from AR to OK, stopped at a store, parked car. Upon returning to car, start ignition and red "BRAKE" light illuminated as well as ABS, Traction control and forward collision icons all lit. "Service brake assist, service esc, rear auto brake and park assist unavailable" warnings all show on the dash. Vehicle had 2747 miles at time this occurred. Systems check on dash showed all tires not registering on the vehicle and the vehicle icon illuminated orange. Vehicle needed to "relearn sensors." Vehicle has several clicking noises in the dash after shutting off. Vehicle brake pedal clicks when depressed at low speeds (as in driving in a parking lot) These noises and

issues were not occurring prior to this vehicle stopping at the 2747 miles. Vehicle is unsafe to drive as this is the main stopping system, we were 300 plus miles from home when this happened."

- July 22, 2025 (NHTSA ID NUMBER: 11675409) (2025 Acadia): "At approximately 4900 miles, the brake master cylinder failed on my vehicle. It has been at the dealership for over a month awaiting parts for repair."

- July 25, 2025 (NHTSA ID Number 11676144) (2025 Traverse): "The master brake cylinder failed around the 1600-mile mark. It seems to be occurring on 2025 Chevrolet Traverse and Buick Enclave models. GM has no ETA on replacement parts. I took it to a nearby dealer service center (Dave Kirk Chevrolet in Crossville, TN), and they diagnosed the issue. I took it to a second dealer (Murfreesboro Chevrolet Buick GMC in TN), and they diagnosed the same issue. The vehicle is now sitting in the dealer's lot with no ETA on a replacement part."

- July 26, 2025 (NHTSA ID Number 11676379) (2025 Traverse): "Began driving warning lights for brakes, abs, traction control, and forward collision on. Brakes then locked up. Pulled over and full lost brake compression. Could have caused an accident if on the highway. Waiting on tow truck to take to the dealership for repair."

- July 28, 2025 (NHTSA ID NUMBER: 11676734) (2024 Traverse): "The contact owns a 2024 Chevrolet Traverse. The contact stated while driving at an undisclosed speed, several unknown warning lights illuminated indicating brake failure. The contact depressed the brake pedal and stood on the brake pedal and the vehicle stopped. The contact turned off the vehicle. While attempting to restart the vehicle, there was an unknown warning light illuminated. The vehicle was driven to the residence. The contact stated while driving at an undisclosed speed, the gear shifter independently shifted into park and the vehicle independently turned off. The vehicle was towed to the dealer however, the vehicle was not diagnosed. The contact stated that the vehicle had been at the dealer for thirty days. The contact was informed that a diagnostic test provided no information of a failure. The manufacturer was not made aware of the failure. The failure mileage was approximately 9,010. The VIN was not available."

- July 28, 2025 (NHTSA ID NUMBER: 11676771) (2025 Acadia): "Brake Master Cylinder failure. Received warning lights on the dash and took to the GMC dealer for the diagnosis. Dealer stated the car is not drivable because the brakes could fail. The head mechanic at the dealership confirmed that the cylinder is the problem. They had no idea as to how long it would take to find a replacement cylinder."

- July 29, 2025 (NHTSA ID NUMBER: 11677129) (2025 Acadia): "Vehicle had a "service ESC" and "service brake assist". Dealership said the master cylinder is bad

and it is not safe to drive. Now its sitting at the dealership with NO eta on parts and no loaner cars."

- July 29, 2025 (NHTSA ID NUMBER: 11677116) (2025 Acadia): "My car has less than 8,000 miles currently. On June 5, I started my car and lights were on saying I needed service and maintenance. I believe it was around 4500 miles at the time. I took it in once, where I bought my car, they said it just needed an update. The next day, all of the same lights were on. Turns out, I need a new brake master cylinder. It's on back order. I bought this car in April. It's been in the shop for a month. This is ridiculous. - the notifications said I needed electronic stability control and service brake assist maintenance."

- July 30, 2025 (NHTSA ID Number 11677317) (2025 Traverse): "As I was driving my 2025 Traverse Z71, at 2180 miles, different lights popped up on the dashboard. I was backing out of my garage when it happened. Lights were ABS, BRAKE, Electronic Stability Control, and pre-collision warning light. Also notifications for Service Brake Assist and Service ESC also came on. The dealer had me drive it to their shop 25 miles away. After inspection, the Chevrolet service department said it was unsafe to drive my Traverse. The part they needed to replace was the Master Cylinder/Brake System Control Module. Unfortunately the part was on backorder and they did not have a loaner I could borrow. I turned in my vehicle Wednesday, June 25, 2025. I got my Traverse back Thursday, July 24, 2025. It was very close to 30 days and I would have followed guidelines for lemon law in state of WI. When I picked up the vehicle, there were several other Traverses waiting on the same part. As of now July, 30th, vehicle is in working order."

- July 31, 2025 (NHTSA ID Number 11677594) (2025 Traverse): "Master Cylinder failure after less than 3 months of ownership and only 3,891 Miles. Multiple warnings lights related to brakes appeared when the car was started. GM already had a TSB for the 2024 Traverse but has not come out to say 2025 models are impacted yet. Multiple reports of people that do have the issue are waiting weeks for a replacement part because GM is not able to source them. Seems that there is a known issue but GM is just waiting for something to happen due to the lack of parts. Given it's the brakes could result is serious injury due to GMs negligence."

- July 31, 2025 (NHTSA ID Number 11677555) (2025 Traverse): "Car with only 3900 miles brand new after 3 months the braking system, collision system, parking assist, ABS and brake lights appeared on dashboard, at the dealer since 07/14/2025, I was suggested not to drive the car. Same day called GM customer service and opened a case, the dealer gives me a rental car to use until the repair is finished. At the end of the same week I called again GM customer service asking about news and the parts was back ordered, they told me to wait 5 business days for a possible repurchase or for any updates for parts. Today 07/31/2025 I called again GM and they said that the parts

were shipped but they didn't had the tracking number, I called my dealer and the parts are in back order without eta."

- July 31, 2025 (NHTSA ID NUMBER: 11677430) (2025 Acadia): "New 2025 GMC Acadia Denali vehicle with only 5,600 miles driven. When starting SUV I pressed start button and brake pedal. I felt the brake pedal pulse down. Once started, the dashboard lit up with warnings of Service ESC and Service Brake Assist. Quickly took to dealer, they ran diagnostic tests and revealed the Master Brake Cylinder is out. Dealer said I should Not drive it due to danger of brakes completely failing! Dealer has other 2025 Acadia's come in with no brakes at all due to same issue and they are still there waiting on same part. Dealer and GM have NO estimate of when they will have a new Master Brake Cylinder as this part is on back order. A case has been created with GM regarding part availability delay. My research has revealed numerous owners of 2025 Acadia, Traverse and Enclave with this same Master Brake Cylinder failure and no parts available waiting months. Brake failure is a MAJOR SAFETY hazard! GM has stopped selling the 2026 Acadia, Traverse and Enclave. They should recall all 2025 Acadia, Traverse and Enclave!"

- August 2, 2025 (NHTSA ID Number 11678020) (2025 Traverse): "I started my Traverse and the brake light, forward collision alert, brake assist, stability control lights came on. The warning messages to service ESC, and service brake assist also came on. I have 2182 miles on my vehicle. No warning of anything wrong before this happened. It is available for inspection. It was towed to the closest dealership who determined the master cylinder needed replacing. I did not drive it due to warnings the brake systems were not functioning properly. Could have caused a wreck if they did not work. It has since been towed to the dealership it was purchased at awaiting their diagnosis. The first dealership said the master cylinder is on backorder with no ETA."

- August 3, 2025 (NHTSA ID Number 11678079) (2025 Traverse): "Warning codes - Service Brake Assist, Service Electronic Stability Control (ESC), Forward Collision system unavailable. Brake pedal felt different with an associated clunk noise. Brake Fluid believed to have been leaking in garage. Dealer diagnosis as Master Brake Cylinder failure. No parts available/no ETA available. Car is 5 months old and under 5,000 miles on the odometer."

- August 4, 2025 (NHTSA ID Number 11678190) (2025 Traverse): "While driving the automatic brake assist failure light came on. I was unable to stop at a very busy intersection and was forced into traffic even though I had a red light. The parking brake, engine light, and light came on."

- August 4, 2025 (NHTSA ID NUMBER: 11678204) (2025 Acadia): "At startup today vehicle displayed "Brake Assist Failure. Press Hard to brake. Speed limited." It also displayed "service." It also displayed "ESC," and the word "service. An internet

search indicated this may be a common problem of this vehicle, caused either by a software error in the Electronic Brake Control Module, or due to a defective brake master cylinder. There is a GM service notice for these defects, N242471431. Regardless of the cause, the brake is extremely mushy, and requires a high degree of force to stop the vehicle. GM says there is no recall due to this defect. This is a brand new vehicle and therefore it must be a defect in the vehicle. Given that braking is a fundamental safety issue, it's hard to believe there is no recall already issued."

- August 6, 2025 (NHTSA ID Number 11678933) (2025 Traverse): "Parked the vehicle a Saturday evening went to get into it Sunday morning and the dash was lit up with abs light, service ESC, traction control, check engine light. Called the dealership I bought it from to tell them what was going on, brought it in on a Monday evening to be looked at Thursday. Was called to be informed the master cylinder went bad. Was told by the service manger part would be in to be fixed Wednesday. Wednesday came and gone with no call, finally got a call Thursday evening that the part did not arrive and NOW they have no ETA on the part."

- August 6, 2025 (NHTSA ID Number 11678927) (2025 Traverse): "the car had a faulty door that would stick intermittently since the day we purchased it (march 10, 2025) and wouldn't open unless forced. we reported the issue on march 23rd to our sales rep (jorge) and didn't act upon it until two months later when it wouldn't open at all. upon bringing it into the shop on may 27th it was determined that there was a faulty latch. they also discovered that the brake light was on and the car was in need of multiple components - master cylinder, the adapter and the reservoir. we have had a rental car since 5/27/25 and yet to receive our car back."

- August 6, 2025 (NHTSA ID Number 11678917) (2025 Traverse): "I was in the car wash and the service ESC came on It also had the traction control, ABS and check engine light came on. When I restarted my car the check engine light only came on . On the Chevy app it says my Anti Breaking System needs serviced. This is a brand new car bought a couple months ago with under 3,000 miles."

- August 6, 2025 (NHTSA ID Number 11678739) (2025 Traverse): "While driving my 2025 Chevy Traverse with under 2,000 miles on the odometer, multiple brake-related warnings suddenly appeared on the dashboard, including: Service Electronic Stability Control, Brake Assist, Brake System Warning, and Anti-lock Brake System (ABS). I brought the vehicle to the dealership for diagnosis, where the issue was confirmed. However, I was informed that the replacement part is currently on back order, with no clear timeline for availability. I immediately contacted GM for assistance and was informed that the issue was due to a defective Brake Master Cylinder (part number 85762161). After further research, I discovered that a defective master cylinder can result in partial or complete brake failure, posing a serious safety risk. Given the extremely low mileage and the critical nature of the affected component, I believe this

issue warrants investigation. I am concerned that similar failures may be occurring in other 2024–2025 Chevy Traverse vehicles and could lead to dangerous situations if not addressed promptly."

- August 7, 2025 (NHTSA ID Number 11679013) (2025 Traverse): "We were told we had a faulty master cylinder that needed to be replaced. The ABS, forward collision braking system, rear collision breaking system, and emergency brake were all at risk, which puts a significant risk to the passengers in the vehicle, including children. The problem was confirmed by the dealership with no information about timing of replacement since there is a national shortage of this part. Warning messages included ABS, BRAKE, forward collision, rear collision- lights came on several times. They appeared suddenly after turning on the car without incident. We tried turning off the car and letting it sit for long periods of time without resolution. The dealership initially flushed the brake line without resolution."

- August 7, 2025 (NHTSA ID NUMBER: 11679053) (2025 Acadia): "dash lit up with ABS, traction control, and ESC warnings. Technician stated the entire brake system needed to be rebuilt. There is currently no ETA on when the parts to be able to accomplish this will be available."

- August 8, 2025 (NHTSA ID Number 11679301) (2025 Traverse): "Master cylinder failure"

- August 9, 2025 (NHTSA ID Number 11679569) (2025 Traverse): "Brake assist, ESC alerts on vehicle. Sat in the dealer service shop for 3 days and said to have been fixed. Still with same issue."

- August 9, 2025 (NHTSA ID NUMBER: 11679553) (2025 Acadia): "Upon starting the vehicle the vehicle immediately starting moving while foot on brake and moved from park to reverse or drive. Unable to stop the vehicle in idle gear and no gas pedal applied. Power steering warning and no brake assist warning on the dash. Unable to stop vehicle within 20ft while traveling at idle speed. Vehicle lights and warnings have been reproduced and is currently at a dealership awaiting further inspection. Vehicle is available for third party inspection if needed. Vehicle at Barker Buick GMC, 6444 W Main St, Houma, LA 70360 on 8/4/25"

- August 11, 2025 (NHTSA ID Number 11679934) (2025 Traverse): "Brake master cylinder ECU failed. Illuminated warning lights for BRAKE, FRONT END COLLISION AVOIDANCE, ABS, and ELECTRONIC STABILITY CONTROL. Took the vehicle to dealership and was told about the part failure. They advised that there was no ETA on parts that are on backorder. The codes were removed and the warning lights went off, but came back on the next day. I was told that the vehicle was

drivable, but they could not guarantee my safety. The dealership had no loaners so I had no choice but to drive the vehicle home."

- August 11, 2025 (NHTSA ID Number 11679878) (2025 Traverse): "I purchased a 2025 Chevrolet Traverse and experienced a complete failure of the master brake cylinder approximately two months after purchase. The brake system failed as I was operating the vehicle, creating a significant safety hazard. Fortunately, no accident occurred, but the car became unsafe and was in the dealership service center for 5 weeks awaiting repair. This failure occurred with very low mileage and without warning. I am concerned that this may be a manufacturing defect or part of a wider issue. The extended service delay also caused major inconvenience and out-of-pocket expenses. I am submitting this complaint so the NHTSA can track similar reports and investigate if necessary."

- August 11, 2025 (NHTSA ID Number 11679748) (2025 Traverse): "ABS and ESC and brake lights came on. Collision beeping and warning went out. Brake pedal vey late to respond to braking. This vehicle is unsafe. It has been sitting and the Chevy dealer for 2 weeks now with no information given to me about when it will be fixed. I call the dealer every other day and they just say that Chevy will be shipping parts. This is clearly a nation wide problem with this vehicle. I've read numerous articles online about people with the same problem and have contacted an attorney"

- August 12, 2025 (NHTSA ID Number 11680138) (2025 Traverse): "Started car and began backing up when ECS, Brake, and ABS messages came up. Upon attempting to break at slower rates of speed it felt like the brakes would slip slightly before catching and stopping. At normal rates of speed (25+) it wasn't noticeable. In shop now with 'censor failure'"

- August 12, 2025 (NHTSA ID NUMBER: 11680024) (2025 Acadia): "I purchased the vehicle, and twelve days later while operating the vehicle I experienced full braking power failure. My foot was to the floor board while trying to get the car to slow down. Up until the point of brake failure, there were no warning lights or "symptoms" that would alert me as to an impending problem. My young child was also in the car so that was extremely scary also. During this time, the "service brake assist" light and ABS light came on. I was able to slow the car down enough, restart the car, and the brakes seemed to work, however all of the related braking lights were on my dash. It was brought to the dealer the next day. The dealer has noted that its the master cylinder that needs to be replaced. However, they replaced it, and the new master cylinder has also failed, so they'll need to try and replace it again. I'm concerned this issue could cause severe accidents in the future if it continues to not be addressed."

- August 13, 2025 (NHTSA ID Number 11680512) (2025 Traverse): "When my new vehicle hit 4k miles, the dash started to show alerts for "Service ESC" and "Service

Break Assist". As well as those alerts, there were additional notification lights for "Brake", "ABS", "Electronic Stability Control (ESC)/Traction Control", and "Forward Collision Alert (FCA)". After some research, I was worried to drive my car incase the breaks would not work properly. So I discontinued to used my car with my 2 young children. The Chevy dealership has confirmed it's the back master cylinder that needs to be replaced. From my research, this is a common issue happening and a roll over issue from the 2024 models."

- August 13, 2025 (NHTSA ID Number 11680385) (2025 Traverse): "August 6, 2025 I was driving and it started to rain and there was a little rain on the road and my vehicle appeared to be hydroplaning. I had never experienced that before and it scared me to the point that I reduced my speed significantly. I arrived at my destination and was there for about three hours and when I started my 2025 Chevrolet Traverse I had 4 lights come on my dashboard along with a warning chime. The lights were the BRAKE LIGHT, ABS LIGHT, FORWARD COLLISION ASSIST LIGHT AND TRACTION CONTROL LIGHT; and a Service ESC and Service Brake Assist message popped up in separate boxes from the lights themselves. I turned off my Traverse and hoped it was some fluke thing and again the same lights came on and same messages. I drove my vehicle home cautiously and parked it. I called the dealer I purchased it from the following morning and was given a service appointment 11 days out and I stated that was unacceptable since I was not sure the vehicle was safe to drive from everything I was reading online. The service dept stated that they could place it on a machine if I stopped into the dealership and let me know if was safe to drive. My husband drove it to the dealership 25 miles away and wasn't happy with the service department and spoke to a manager and he stated they would look at my vehicle the following day and gave me a loaner. My husband advised the manager that everything I had been reading pointed to an issue with the master brake cylinder and the parts are on backorder and the manager said he hadn't heard of any issues with them. I received a call 4 days later after asking the status of my new car repeatedly and was told that it is the master brake cylinder and a couple of the parts are on backorder and they don't know when they will arrive; could be a week, two or a month. I am extremely concerned about the seriousness of this issue and the lack of parts to repair the vehicle. As I stated, there are multiple incidents on google over this same issue."

- August 14, 2025 (NHTSA ID Number 11680766) (2025 Traverse): "Brake light, ABS light, Forward collision light and Traction control light all come on when the car was started. Had to be towed to Woody Folsom dealership in Baxley, GA and is currently still there. Was told it was the brake master cyclinder and it is on nationwide backorder. The part came in this week and they put it in and could not get the car to program. They are waiting for another brake master cyclinder to arrive. So I am at 8 weeks of the car being down and in service at the dealership with no estimated date of when and if it can be fixed. I have received Onstar notifications that says A critical

issue with the engine and transmission system in your 2025 Chevrolet Traverse has been detected. The battery in your 2025 Chevrolet Traverse is critically low."

- August 16, 2025 (NHTSA ID NUMBER: 11681032) (2024 Traverse): "Was out of town and at that time was in the highway when notification came up advising no brake pad life and brakes started squeaking. Took it to dealership next day and was advised there is a problem with the master brake cylinder which is in nation wide back order. Has been at the dealership since then"

- August 16, 2025 (NHTSA ID Number 11681075) (2025 Traverse): "On Aug 15th, 2025 I went to pick up my children from school. As I picked up my child and turned the vehicle on to go pick up my second child, the car notified me on the dash board of 4 icons. Brake, ABS, traction and collision. Service ESC and Brake assist service needed. I was very concerned when I went to drive and when I gently eased into the brakes I could hear a small noise, every time I pressed the brakes. My second childs school is about 4 minutes away. I called Chevrolet dealership where I purchased it from in February, explained everything and they said i needed to take it in to a Chevrolet dealership near me. I called the nearest Chevy dealership and they said to bring it in the same day or the next day. Saturday Aug 16th, 2025 at 8am I was at the dealership. They checked to see what codes ran up and if it was safe to drive, they pulled 4 codes and told me it wasn't safe and I needed to leave it for 10-14 days minimum. They said they could not provide me a vehicle / loaner. I had already called Chevrolet Customer service the day before to receive assistance with a temporary vehicle as the dealership had told me they had no loaner to provide. I explained to Chevrolet Customer service that I am a disabled & handicap veteran with children. I do not have a secondary vehicle and it is a necessity as i drop off and pick up my children and attend medical appointments. The employee was able to open a case for me and send it to the regional person around my area. No one has called me. Today Saturday, I dropped off my vehicle and picked up a rental according to the guidelines provided by the Chevrolet employee for reimbursement a GM vehicle under $44 a day. This is a huge inconvenience , unacceptable from a new 2025 vehicle. Ot has put me in a hardship position financially. The hassle, my Traverse has handicap plates and my rental does not. Very upset and frustrated. I need as much support and help from GM / Chevrolet to resolve this SAFETY issue for my children."

- August 18, 2025 (NHTSA ID NUMBER: 11681285) (2025 Acadia): "Purchase vehicle on August 13, 2025 with 27 miles on it. Drove home from dealership. Started the car on Friday morning and all of these warning lights appeared - Electronic Stability Control, Brake Assist Service, Brake light indicator, ABS indicator, traction control indicator, collision warning indicator. Car only had 69 miles at the time. Took vehicle to dealership on August 18, 2025. After diagnostics were performed, it was determined that the Master Brake Cylinder is the issue. The part is on back order and there is no estimated time of when the part will be received and installed. Dealership

Rep told me that it was safe to drive the vehicle to the dealership. Service Technician then explained to me that I should not be driving the vehicle."

- August 19, 2025 (NHTSA ID Number 11681631) (2025 Traverse): "We have. 2025 Chevy Traverse that we bought 10 days ago and it has 597 miles. I stopped at a location turned off the car. When I got back in to leave and turned it on, The brake light came on, and brake light, collision light, service ESC and service brakes light. Apparently there are 4 or more GM cars in the dealership service department for over a month waiting for the part to fix this issue. The car is currently in the service department of the dealership we bought it from 10 days ago with no known date of fixing due to the national back order on parts."

- August 19, 2025 (NHTSA ID Number 11681565) (2025 Traverse): "On 8/11/2025 the brakes failed and the brake petal went all the way down. The check engine light came on as well as the ABS, traction control, front collision lights. The service ESC and service brake assist came on as well. It's in the shop and needs a new brake master cylinder."

- August 19, 2025 (NHTSA ID Number 11681520) (2025 Traverse): "8/4/25 Vehicle was pulling from side road to main highway when lights and warnings came on dash cluster. brakes were very soft and not very responsive, car was slowed down on its own. Was able to pull into a driveway and take photos of some of the messages. One said service traction control, one said service ASC, and one said 'brake assist fail, press hard to brake, speed reduced. After restarting car all was normal. 8/11/25. Sitting in some morning traffic and all the same messages came up and brakes were soft again. Was able to keep some distance between myself and other cars until I could get off the road. Immediately made an appointment for dealership service. After restarting car, all was normal again. Took car to dealership at appointed time and they kept it for a week and only did test drives to try and recreate problem. When they couldn't they returned the vehicle to me with nothing done but clearing codes and checking for updates. This is unacceptable. I am hauling my precious grandchildren in a brand new vehicle that could have a braking failure at any time. Obviously braking failures can cost lives. There is a GM service bulletin for this exact problem in December 2024 (N242482170) requesting the master cylinder should be replaced. This service bulletin doesn't extend to the 2025 Traverse model and it should as the problems are exactly the same. I hope this can be resolved. I'm very uneasy driving now and just keep wondering when this will happen again and how bad it could be."

- August 20, 2025 (NHTSA ID Number 11682014) (2025 Traverse): "Four weeks after purchasing the vehicle the anti-lock brakes light, traction control and forward collision lights all came on. I took it to the dealership and was told this is a known issue with the master cylinder. My car was there for 13 weeks."

- August 21, 2025 (NHTSA ID Number 11682183) (2025 Traverse): "I purchased a 2025 Chevy Traverse in April 2025. The car had under 1056 miles on it. I was in another state 325 miles away from home when lights came on in the car. The PARK brake came on, the ABS light came on and a few others. The alert said, Service ESC, and service Brake Assist. What component or system failed or malfunctioned, and is it available for inspection upon request? We did research online and there were 33 other complaints from people with similar complaints. They reported that it was a master cylinder part and the dealers don't have the part in stock. It could take up to two weeks for the part. How was your safety or the safety of others put at risk? My safety and my husband's safety were at risk because we had to drive the car home. Our lives were at risk if the brakes failed. We took it to Key Motors a Chevy dealership in S. Burlington, VT. He said they would have to diagnose it themselves and the part could take two weeks or more. We cut our vacation short and could not stay in VT that long. We are elderly and did not have enough medicine, not to mention the cost of hotels. The VT dealer said without the computer, the car defaults to the driver like a 1980's car. We took our chances and drove it home. Has the problem been reproduced or confirmed by a dealer or independent service center? No, but many people online have complained of the same problem. Has the vehicle or component been inspected by the manufacturer, police, insurance representatives or others? We had it towed to our local dealership, Bob Johnson Chevrolet. They just sent us a bill for $214 for certified multi point vehicle inspection. I still don't know what problem. Onstar diagnosed it as ABS braking and stability diagnostic code; an issue has been detected in the Antilock Braking System. Were there any warning lamps, messages or other symptoms of the problem prior to the failure, and when did they first appear? No other warnings or symptoms before messages appeared."

- August 23, 2025 (NHTSA ID Number 11682587) (2025 Traverse): "Took my Traverse through a car wash and when putting the vehicle from Neutral to Drive, a slew of lights turned on (ABS, traction control, check engine light). Car will be evaluated this coming week but all signs are pointing to the brake module and master cylinder as seen all over the internet and Reddit. This is a serious, common issue with GM vehicles and something needs to be done asap about this."

- August 25, 2025 (NHTSA ID Number 11682875) (2025 Traverse): "Suddenly with just over 8300 miles on the vehicle, lights for ABS, traction control, forward collision and parking brake all came on. The brake pedal started to feel spongy on the way to the dealership. The dealership replaced the master cylinder under warranty."

- August 26, 2025 (NHTSA ID NUMBER: 11683123) (2025 Acadia): "Brake assist warning message and BRAKE light appeared a couple of weeks ago, along with others. Brought the car into the dealer, who initially thought they cleared the errors and reported no additional issues when they ran the diagnostics. Nothing was cleared. Vehicle application and monitor also does not show an issue, even though the warning

appears at each start up and none of the related safety systems work (ABS, ESC, AEB, etc.) that rely on the brake pump. Information from the dealer and owners manual are in conflict, with the dealer allowing me to drive while the owner's manual indicates it should not be driven with the BRAKE light lit. They have now "diagnosed" a "failed" master cylinder unit that includes electronics and the pump. The car had about 4500 miles on it when the issue occurred. I am at a loss for if it should be driven and trusted or not."

- August 30, 2025 (NHTSA ID NUMBER: 11684053) (2024 Traverse): "08/08/2025 Brake system failure. Went through an intersection and was not able to stop. Dealer found internal leak in the master cylinder/hydraulic BPMV assembly. Warning lights and messages did not come on until the moment of failure. Had no warning before."

- September 2, 2025 (NHTSA ID Number 11684618) (2025 Traverse): "Went out for lunch and the following warning lights popped up on my dash, "Brake", the ABS light was lit up, service brake assist and service ESC all popped up. Had my truck towed to lexington park chevy because it said it was not safe to drive"

- September 1, 2025 (NHTSA ID Number 11684481) (2025 Traverse): "Normal evening running errands and brake pedal went to the floor, unable to stop and starting rolling into oncoming traffic. Put transmission in Park, then reverse to get out the main highway and back to the service road, car would continue to roll. Service ESC, Service Brake Assist, Engine light and more popped up on dash. Vehicle had to get towed. This could have been a very dangerous situation. Being told the Master Cylinder needs to be replaced. Part is ordered with no delivery date."

- September 7, 2025 (NHTSA ID NUMBER: 11685561) (2025 Acadia): "I purchased the car on [XXX]. Drove the car about 8000 miles and then all of a sudden the dash lights all lit up for the brakes, ABS, traction control. I pulled the car over and turned it off. When I restarted my car, the lights continued to stay on and it told me to service immediately. I called my dealer and they could not get me in within 2 weeks so I took it to another local GMC dealer who could get it in to look at it that week. I took it in on July 9th, and then received a called a couple days later telling me that it had a bad Brake control module that they needed to order. A week later was told the part was on backorder. Two weeks later was told the part came in but it was still missing the brake master cylinder and reservoir. At that time, I was told the ETA was unknown and I have been calling back every week. On August 23rd I filed a complaint with GMC and have struggled to get anywhere with them. They tell me the dealer has the parts and the dealer tells me that they do not. I still have no ETA and it has been officially 2 months without a car. I am told that it is not safe to drive."

- September 9, 2025 (NHTSA ID Number 11686031) (2025 Traverse): "Master cylinder needing replaced confirmed by dealer. ABS. Traction control forward emergency

braking system service lights appear on dash and the systems are disabled saying service soon. Adaptive cruise control disabled super cruise disabled."

- September 9, 2025 (NHTSA ID Number 11685937) (2025 Traverse): "Master cylinder went out with only 5400 miles"

52. Owners have also been complaining about the Master Brake Defect on vehicle enthusiast forums. For instance, on December 21, 2024, a 2024 Traverse owner posted on a Traverse enthusiast website that they were experiencing the braking system issue where the brake pedal sank into the floor. The same issue happened again, this time just few blocks from the GM dealer. Another owner of a 2024 Traverse responded the issue was due to the defective master brake cylinder and that they experienced same issue too, where they crashed into a parked car due to the sudden loss of brakes. *See* https://www.traverseforum.com/threads/brake-issues.26173/ (last visited Oct. 5, 2026).

53. Similarly, an owner of 2025 Traverse posted on Facebook on July 6, 2025 about experiencing the master brake cylinder failure. The post drover 30 responses with other 2025 Traverse owners sharing similar complaints. *See* https://www.facebook.com/share/p/1Fr7FmGx4C/ (last visited September 24, 2025). Owners of 2025 Traverse made similar complaint on Redditt. *See* https://www.reddit.com/r/ChevyTraverse/comments/1lb606x/brakes_went_out_2025_traverse/ (last visited Oct. 5, 2026).

54. Owners of 2025 Acadia Class Vehicles have made similar complaints online, drawing more than 100 responses. *See, e.g.*, https://www.facebook.com/share/p/1RSStpSvyE/ ("With just 500 miles on it my master cylinder is out. It's been in the dealership shop for 3 weeks and no eta on back order part.") (last visited September 24, 2025); https://www.facebook.com/share/p/1A1fHmzY6P/ (last visited September 24, 2025);

https://www.reddit.com/r/gmc/comments/1m7eahd/brake_problem_with_2025_gmc_acadia/ (last visited Oct. 5, 2026).

## PLAINTIFFS' INDIVIDUAL ALLEGATIONS

### A. Stephanie Fehrmann

55. On April 19, 2025, Plaintiff Fehrmann purchased a new 2025 Chevrolet Traverse LT vehicle, Vehicle Identification Number 1GNERGRS0SJ236211 (hereafter the "Fehrmann Vehicle"), from Jansen Chevrolet, Co., Inc. ("Jansen Chevrolet"), an authorized GM dealership located in Germantown, Illinois.

56. At the time of sale, Jansen Chevrolet assured Plaintiff Fehrmann that the vehicle was accompanied by GM's New Vehicle Limited Warranty. The dealership, however, did not disclose the existence of the Defect to Plaintiff Fehrmann. Nor did GM disclose the existence of the Defect in promotional materials, on the window sticker affixed to the vehicle, on its website, or elsewhere.

57. If GM or its dealership had told Plaintiff Fehrmann about the existence of the Master Brake Defect, Plaintiff Fehrmann would not have purchased the vehicle at all, even if she was assured that at some point in the future GM would repair the defect. Accordingly, Plaintiff Fehrmann overpaid for her vehicle due to the Defect.

58. In or around July 2025, and less than three months after purchasing her vehicle, Plaintiff Fehrmann experienced the Master Brake Defect. As Plaintiff Fehrmann was backing the Fehrmann Vehicle out of a parking spot, numerous warning lights suddenly illuminated on the vehicle's instrument cluster. Plaintiff Fehrmann placed the Fehrmann Vehicle in "Park" and shut the vehicle off and restarted it in an effort to clear the warnings. However, the same warning lights returned upon restart.

59. Plaintiff Fehrmann then called Jansen Chevrolet and reported what had happened, and thereafter drove the Fehrmann Vehicle to the dealership for repair. Plaintiff Fehrmann's children were in the vehicle with her during that drive. Throughout the drive, each time Plaintiff Fehrmann applied the brakes she was required to press the brake pedal substantially harder than normal in order to engage the brakes, and it felt to her as though the vehicle had no power brakes. Fearing that the brakes would fail altogether while her children were in the car, Plaintiff Fehrmann was forced to drive at a very low rate of speed.

60. Jansen Chevrolet inspected and diagnosed the Fehrmann Vehicle and attempted a repair by replacing the master brake cylinder. At the time, the Fehrmann Vehicle's odometer read approximately 3,692 miles.

61. The Fehrmann Vehicle was out of service by reason of that repair attempt from July 2, 2025 through August 7, 2025, a period of 36 days.

62. Plaintiff Fehrmann provided GM with written notice regarding the defect in her vehicle and of her claims.

**B. <u>Jeff Mellinger</u>**

63. On May 5, 2025, Plaintiff Mellinger purchased a new 2025 Chevrolet Traverse High Country vehicle, Vehicle Identification Number 1GNEVKRS2SJ192467 (hereafter the "Mellinger Vehicle"), from Young Chevrolet GMS of Ionia, Inc. ("Young Ionia"), an authorized GM dealership located in Ionia, Michigan.

64. At the time of sale, Young Ionia assured Plaintiff Mellinger that the vehicle was accompanied by GM's New Vehicle Limited Warranty. The dealership, however, did not disclose the existence of the Defect to Plaintiff Mellinger. Nor did GM disclose the existence of the Defect in promotional materials, on the window sticker affixed to the vehicle, on its website, or elsewhere.

65. If GM or its dealership had told Plaintiff Mellinger about the existence of the Master Brake Defect, Plaintiff Mellinger would not have purchased the vehicle at all, even if he was assured that at some point in the future GM would repair the defect. Accordingly, Plaintiff Mellinger overpaid for his vehicle due to the Defect.

66. In or around July 2025, and less than three months after purchasing his vehicle, Plaintiff Mellinger experienced the Master Brake Defect. Plaintiff Mellinger started the Mellinger Vehicle in his garage and a number of warning lights immediately appeared on the vehicle's instrument cluster. When Plaintiff Mellinger's wife pressed the brake pedal, the pedal depressed unusually low, indicating a loss of hydraulic braking pressure.

67. Plaintiff Mellinger proceeded to drive the Mellinger Vehicle cautiously to Young Ionia and presented it to the dealership for repair. Young Ionia inspected and diagnosed the Mellinger Vehicle and determined that there was a fault internal to the brake system control module and master brake cylinder assembly. At the time, the Mellinger Vehicle's odometer read approximately 1,609 miles. Young Ionia thereafter attempted a repair by replacing the master brake cylinder.

68. The Mellinger Vehicle was out of service by reason of that repair attempt from July 23, 2025 through August 19, 2025, a period of 27 days.

69. Plaintiff Mellinger provided GM with written notice regarding the defect in his vehicle and of his claims.

**C. <u>Rachel Solak</u>**

70. On April 29, 2025, Plaintiff Solak purchased a new 2025 Chevrolet Traverse LT vehicle, Vehicle Identification Number 1GNEVGRS7SJ254068 (hereafter the "Solak Vehicle"), from Allen Chevrolet Cadillac ("Allen Chevrolet"), an authorized GM dealership located in Monroe, Michigan.

71. At the time of sale, Allen Chevrolet assured Plaintiff Solak that the vehicle was accompanied by GM's New Vehicle Limited Warranty. The dealership, however, did not disclose the existence of the Defect to Plaintiff Solak. Nor did GM disclose the existence of the Defect in promotional materials, on the window sticker affixed to the vehicle, on its website, or elsewhere.

72. If GM or its dealership had told Plaintiff Solak about the existence of the Master Brake Defect, Plaintiff Solak would not have purchased the vehicle at all, even if she was assured that at some point in the future GM would repair the defect. Accordingly, Plaintiff Solak overpaid for her vehicle due to the Defect.

73. In or around July 2025, and approximately three months after purchasing her vehicle, Plaintiff Solak experienced the Master Brake Defect. Plaintiff Solak started the Solak Vehicle in her garage and warning lights immediately illuminated on the vehicle's instrument cluster. Plaintiff Solak proceeded to call Allen Chevrolet and report the warning lights. The dealership told Plaintiff Solak that the Solak Vehicle was purportedly safe to drive.

74. Relying on the dealership's assurance, Plaintiff Solak proceeded to drive the Solak Vehicle. However, when she pressed the brake pedal, the braking system emitted an audible crunching noise and the brake pedal was substantially harder to depress than usual.

75. Allen Chevrolet initially inspected the Solak Vehicle and told Plaintiff Solak that the vehicle was fine. The dealership did not perform any repair to the vehicle's braking system at that time. Thereafter, additional warning lights illuminated on the Solak Vehicle's instrument cluster and Plaintiff Solak re-presented the vehicle to Allen Chevrolet for repair. At the time, the Solak Vehicle's odometer read approximately 2,834 miles. On the second presentation, Allen Chevrolet attempted a repair by replacing the brake booster assembly.

76. The Solak Vehicle was out of service by reason of repair from July 28, 2025 through August 13, 2025, a period of 16 days.

77. Plaintiff Solak provided GM with written notice regarding the defect in her vehicle and of her claims.

**D. Alexie Wise**

78. On April 5, 2025, Plaintiff Wise purchased a new 2025 Chevrolet Traverse LT vehicle, Vehicle Identification Number 1GNERGRS1SJ225931 (hereafter the "Wise Vehicle"), from Henderson Chevrolet Inc. ("Henderson Chevrolet"), an authorized GM dealership located in Henderson, Kentucky.

79. At the time of sale, Henderson Chevrolet assured Plaintiff Wise that the vehicle was accompanied by GM's New Vehicle Limited Warranty. The dealership, however, did not disclose the existence of the Defect to Plaintiff Wise. Nor did GM disclose the existence of the Defect in promotional materials, on the window sticker affixed to the vehicle, on its website, or elsewhere.

80. If GM or its dealership had told Plaintiff Wise about the existence of the Master Brake Defect, Plaintiff Wise would not have purchased the vehicle at all, even if she was assured that at some point in the future GM would repair the defect. Accordingly, Plaintiff Wise overpaid for her vehicle due to the Defect.

81. In or around July 2025, and approximately three months after purchasing her vehicle, Plaintiff Wise experienced the Master Brake Defect. Plaintiff Wise started the Wise Vehicle and warning lights immediately illuminated on the vehicle's instrument cluster. In addition, when Plaintiff Wise pressed the brake pedal, the braking system emitted a loud, audible crunching noise, which sounded like stepping on a bag of potato chips.

82. On July 9, 2025, Plaintiff Wise presented the Wise Vehicle for repair to Uebelhor & Sons Chevrolet, an authorized GM dealership located in Jasper, Indiana. At the time, the Wise Vehicle's odometer read approximately 4,051 miles. Uebelhor & Sons Chevrolet inspected the Wise Vehicle, informed Plaintiff Wise that the replacement parts necessary to attempt to repair the vehicle were on nationwide backorder, returned the vehicle to Plaintiff and advised Plaintiff Wise that it was safe to drive the vehicle in the interim while the dealership waited for the replacement parts to arrive.

83. Thereafter, and at the dealership's direction, Plaintiff Wise continued to drive the Wise Vehicle. The vehicle's brakes continued to malfunction and continued to emit audible crunching noises.

84. On August 11, 2025, Plaintiff Wise returned the Wise Vehicle to Uebelhor & Sons Chevrolet, which then attempted a repair by replacing the master brake cylinders.

85. The Wise Vehicle was out of service by reason of that repair from August 11, 2025 through August 13, 2025. That period does not include the more than one month during which GM and its authorized dealership were unable to obtain the parts necessary to repair the Wise Vehicle and during which Plaintiff Wise was forced to operate the unsafe, unrepaired vehicle.

86. Plaintiff Wise provided GM with written notice regarding the defect in her vehicle and of her claims.

**E. Stephen Worthington**

87. On May 8, 2025, Plaintiff Worthington purchased a new 2025 Chevrolet Traverse High Country vehicle, Vehicle Identification Number 1GNEVKRS6SJ240696 (hereafter the "Worthington Vehicle"), from Serpentini Chevrolet of Medina ("Serpentini Chevrolet"), an authorized GM dealership located in Medina, Ohio.

88. At the time of sale, Serpentini Chevrolet assured Plaintiff Worthington that the vehicle was accompanied by GM's New Vehicle Limited Warranty. The dealership, however, did not disclose the existence of the Defect to Plaintiff Worthington. Nor did GM disclose the existence of the Defect in promotional materials, on the window sticker affixed to the vehicle, on its website, or elsewhere.

89. If GM or its dealership had told Plaintiff Worthington about the existence of the Master Brake Defect, Plaintiff Worthington would not have purchased the vehicle at all, even if he was assured that at some point in the future GM would repair the defect. Accordingly, Plaintiff Worthington overpaid for his vehicle due to the Defect.

90. In or around July 2025, and less than two months after purchasing his vehicle, Plaintiff Worthington experienced the Master Brake Defect. Warning lights illuminated on the Worthington Vehicle's instrument cluster, and the brake pedal became harder to depress than usual, requiring Plaintiff Worthington to apply greater force to the pedal in order to slow and stop the vehicle.

91. On July 7, 2025, Plaintiff Worthington presented the Worthington Vehicle to Serpentini Chevrolet for repair. At the time, the Worthington Vehicle's odometer read approximately 361 miles. Serpentini Chevrolet initially attempted repair by performing a hydraulic system bleeding, and returned the Worthington Vehicle to Plaintiff Worthington on July 9, 2025.

92. After the Worthington Vehicle was returned to Plaintiff Worthington, the Master Brake Defect continued to manifest.

93. On July 30, 2025, Plaintiff Worthington presented the Worthington Vehicle to Serpentini Chevrolet a second time for repair of the same Defect. In response, Serpentini Chevrolet attempted a repair by replacing the master brake cylinder.

94. The Worthington Vehicle was out of service by reason of repair from July 7, 2025 through July 9, 2025, and again from July 30, 2025 through August 13, 2025.

95. Plaintiff Worthington provided GM with written notice regarding the defect in his vehicle and of his claims.

**F. Marlene Jennis**

96. On April 22, 2025, Plaintiff Jennis purchased a new 2025 GMC Acadia Elevation vehicle, Vehicle Identification Number 1GKENKRS1SJ204525 (hereafter the "Jennis Vehicle"), from Classic Chevrolet Cadillac ("Classic Chevrolet"), an authorized GM dealership located in Beaumont, Texas.

97. Plaintiff Jennis selected the GMC Acadia in part because of its size and because its seating height and door configuration made it comparatively easy for her to enter and exit the vehicle. Plaintiff Jennis has a chronic condition that limits her mobility, and the physical accessibility of the vehicle was a material consideration in her purchasing decision.

98. At the time of sale, Classic Chevrolet assured Plaintiff Jennis that the vehicle was accompanied by GM's New Vehicle Limited Warranty. The dealership, however, did not disclose the existence of the Defect to Plaintiff Jennis. Nor did GM disclose the existence of the Defect in promotional materials, on the window sticker affixed to the vehicle, on its website, or elsewhere.

99. If GM or its dealership had told Plaintiff Jennis about the existence of the Master Brake Defect, Plaintiff Jennis would not have purchased the vehicle at all, even if she was assured that at some point in the future GM would repair the defect. Accordingly, Plaintiff Jennis overpaid for her vehicle due to the Defect.

100. Thereafter, Plaintiff Jennis experienced the Master Brake Defect. A warning light illuminated on the Jennis Vehicle's instrument cluster alerting Plaintiff Jennis to a problem with the vehicle's braking system.

101. On December 19, 2025, Plaintiff Jennis presented the Jennis Vehicle to Classic Chevrolet for repair of the Master Brake Defect. At the time, the Jennis Vehicle's odometer read approximately 14,258 miles. The Jennis Vehicle was out of service by reason of repair from December 19, 2025 through January 8, 2026, a period of 21 days. During that period, Classic Chevrolet did not provide Plaintiff Jennis with a comparable loaner vehicle. Instead, the dealership initially provided Plaintiff Jennis with a separate vehicle subject to the condition that she could not drive more than 50 miles per day without incurring an additional fee. Because of that mileage restriction, Plaintiff Jennis was forced to cancel her long-planned Christmas visit to her sister in Waco, Texas.

102. After the Christmas holiday, when alternate rental vehicles became available, GM's dealership placed Plaintiff Jennis in a substantially smaller vehicle than the GMC Acadia she had purchased. As a result, each time Plaintiff Jennis drove the replacement vehicle to work or elsewhere, she experienced significant physical difficulty getting into and out of the vehicle.

103. On January 20, 2026, Plaintiff Jennis provided GM with written notice regarding the defect in her vehicle and of the nature of her.

## CLASS ACTION ALLEGATIONS

### A. The Classes

104. Plaintiffs bring this action on their own behalf, and on behalf of Illinois, Kentucky, Michigan, Ohio, and Texas State classes pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3), and / or 23(c)(5).

**<u>Illinois Class:</u>** All persons or entities who purchased or leased a 2025 Chevrolet Traverse, 2025 GMC Acadia, 2025 Buick Enclave, 2025 Chevrolet Colorado, or 2025 GMC Canyon vehicle in the State of Illinois.

**<u>Kentucky Class</u>:** All persons or entities who purchased or leased a 2025 Chevrolet Traverse, 2025 GMC Acadia, 2025 Buick Enclave, 2025 Chevrolet Colorado, or 2025 GMC Canyon vehicle in the State of Kentucky.

**<u>Michigan Class</u>:** All persons or entities who purchased or leased a 2025 Chevrolet Traverse, 2025 GMC Acadia, 2025 Buick Enclave, 2025 Chevrolet Colorado, or 2025 GMC Canyon vehicle in the State of Michigan.

**<u>Ohio Class</u>:** All persons or entities who purchased or leased a 2025 Chevrolet Traverse, 2025 GMC Acadia, 2025 Buick Enclave, 2025 Chevrolet Colorado, or 2025 GMC Canyon vehicle in the State of Ohio.

**<u>Texas Class</u>:** All persons or entities who purchased or leased a 2025 Chevrolet Traverse, 2025 GMC Acadia, 2025 Buick Enclave, 2025 Chevrolet Colorado, or 2025 GMC Canyon vehicle in the State of Texas.

105. Defendant and its employees or agents are excluded from the Classes.

### B. <u>Numerosity</u>

106. Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased in Illinois, Kentucky, Michigan, Ohio, Texas.

### C. <u>Common Questions of Law and Fact</u>

107. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

a. Whether the Class Vehicles were sold with defective master brake cylinder assemblies;

b. When Defendant learned about the defective nature of the Class Vehicles' master brake cylinder assemblies;

c. Whether Defendant had a duty to disclose the defective nature of the Class Vehicles master brake cylinder assemblies to owners and lessees;

d. Whether Defendant had an obligation to repair the defective master brake cylinder assemblies under its warranty;

e. Whether the defective master brake cylinder assemblies render the Class Vehicle unmerchantable at the time of sale;

f. Whether Defendant is liable for damages, and the amount of such damages; and

g. Whether Plaintiffs and class members are entitled to equitable relief including injunctive relief.

**D. <u>Typicality</u>**

108. Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased the Class Vehicles, as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

**E. <u>Protecting the Interests of the Class Members</u>**

109. Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor their counsel have any interest which might cause them not to vigorously pursue this action.

**F. <u>Proceeding Via Class Action is Superior and Advisable</u>**

110. A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia,* Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

111. Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Class as a whole.

**<u>FIRST CAUSE OF ACTION</u>**
**Fraudulent Concealment**
**(Plaintiffs on behalf of their respective State Classes)**

112. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

113. Prior to selling the Class Vehicles to Plaintiffs and the members of the Class, Defendant knew that the Class Vehicles suffered from the Master Brake Defect.

114. By failing to disclose and concealing the Master Brake Defect from Plaintiffs and Class Members, Defendant concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

115. Defendant was under a duty to Plaintiffs and the Class Members to disclose the Master Brake Defect and/or the associated repair costs because:

a. Defendant was in a superior position to know the true state of facts about the Class Vehicles' Master Brake Defect;

b. Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

c. Defendant knew that the Master Brake Defect entailed costly repairs;

d. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their vehicles have the Master Brake Defect until after they purchased the Class Vehicles; and/or

e. Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Master Brake Defect.

116. On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Master Brake Defect and the performance and quality of Class Vehicles.

117. The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

118. Plaintiffs and the Class relied on Defendant to disclose material information it knew, such as the Master Brake Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

119. By failing to disclose the Master Brake Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

120. The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

121. Had Plaintiffs and other Class Members known that the Class Vehicles suffer from the Master Brake Defect, they would not have purchased the Class Vehicles or would have paid less for them.

122. Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will lose their ability to slow down and come to a stop while driving when applying brakes, which is the reasonable and objective consumer expectation for vehicles.

123. As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles and their braking system assemblies are defective and require repairs or replacement, and are worth less money because of the Master Brake Defect.

124. Accordingly, Defendant is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

125. Defendant's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class Members' rights and well-being, to enrich Defendant. Defendant's conduct warrants an

assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

126. Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Master Brake Defect. Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiffs and Class Members were not receiving vehicles of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect.

127. Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles, and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**
**(Plaintiffs on behalf of their respective State Classes)**

128. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

129. Defendant has long known that about the Master Brake Defect which it concealed and failed to disclose to Plaintiffs and Class Members.

130. As a result of its fraudulent acts, and omissions related to the Master Brake Defect, Defendant obtained monies which rightfully belong to Plaintiffs, and the Class Members to the detriment of Plaintiffs, and Class Members.

131. Defendant appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Master Brake Defect, paid a higher price for their vehicles which actually had lower values. Defendant also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

132. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

133. Defendant's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

134. As a result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

135. Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

136. Additionally, Plaintiffs seek injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiffs also seek injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendant from selling the Class Vehicles with misleading information concerning the Master Brake Defect; compelling Defendant to provide Class members with adequate repairs or with replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## THIRD CAUSE OF ACTION
**Breach of Express Warranty Pursuant to 810 ILCS 5/2-313**
**(Plaintiff Fehrmann on behalf of the Illinois Class)**

137. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

138. In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Fehrmann and Illinois Class Members with a New Vehicle Limited Warranty, under which it agreed to provide repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise, vibrations, or other normal characteristics of the vehicle, within the first 36 months or 36,000 miles in service, whichever comes first.

139. Plaintiff Fehrmann and Illinois Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

140. Plaintiff Fehrmann and Illinois Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class Member by failing to repair the Master Brake Defect within a reasonable period of time under the vehicle's warranty as described herein.

141. As a result of said nonconformities, Plaintiff Fehrmann and Illinois Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

142. Plaintiff Fehrmann and Illinois Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

143. As a direct and proximate result of the failure of Defendant to comply with its obligations under the express warranties, Plaintiff Fehrmann and Illinois Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to 810 ILCS 5/2-314**
**(Plaintiff Fehrmann on behalf of the Illinois Class)**

144. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

145. Defendant is a merchant with respect to motor vehicles.

146. The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Fehrmann and the Illinois Class Members.

147. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

148. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Master Brake Defect and thus were not in merchantable condition when Plaintiff Fehrmann and the Illinois Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

149. Defendant has breached the implied warranty of merchantability because the Class Vehicles, when sold or leased, would not pass without objection in the trade.

150. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

151. Additionally, as a result of the Master Brake Defect, Plaintiff Fehrmann and the Illinois Class Members were harmed and suffered actual damages.

152. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of 810 ILCS 5/2-314 and, as to leased Class Vehicles, 810 ILCS 5/2A-212.

**FIFTH CAUSE OF ACTION**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1,** *et seq.*
**(Plaintiff Fehrmann on behalf of the Illinois Class)**

153. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

154. Plaintiff Fehrmann and each Illinois Class Member is a "consumer" and a "person" within the meaning of 815 ILCS 505/1(c) and 1(e).

155. Defendant is a "person" within the meaning of 815 ILCS 505/1(c).

156. Defendant's sale, marketing, and servicing of the Class Vehicles constitutes "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

157. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits the use of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission, in the conduct of any trade or commerce. 815 ILCS 505/2.

158. Defendant engaged in deceptive acts and practices, and in the concealment, suppression, and omission of material facts, by failing to disclose the Master Brake Defect to Plaintiff Fehrmann and Illinois Class Members.

159. Defendant intended that Plaintiff Fehrmann and Illinois Class Members rely on its concealment, suppression, and omission of material facts concerning the Master Brake Defect.

160. Defendant also engaged in unfair practices within the meaning of 815 ILCS 505/2 because its conduct offends public policy, is immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers that consumers could not reasonably have avoided.

161. Defendant was under a duty to Plaintiff Fehrmann and Illinois Class Members to disclose the Master Brake Defect because.

(a) Defendant was in a superior position to know the true state of facts about the Master Brake Defect contained in the Class Vehicles;

(b) Plaintiff Fehrmann and Illinois Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased or leased the Class Vehicles; and

(c) Defendant knew that Plaintiff Fehrmann and Illinois Class Members could not reasonably have been expected to learn about or discover the Master Brake Defect; and

(d) Defendant made partial disclosures about the quality and safety of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Master Brake Defect.

162. The facts concealed or not disclosed by Defendant to Plaintiff Fehrmann and Illinois Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

163. Plaintiff Fehrmann and Illinois Class Members relied on Defendant to disclose material information it knew, such as the Master Brake Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had Defendant disclosed this information.

164. Defendant's failure to disclose this information was misleading in a material respect because a reasonable consumer would have been misled by Defendant's conduct.

165. Defendant's deceptive acts and practices were consumer-oriented because they had a broad-range impact on consumers at large, affecting all owners and lessees of Class Vehicles.

166. By failing to disclose the Master Brake Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

167. Moreover, Defendant's intentional concealment of and failure to disclose the Master Brake Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiff Fehrmann and Illinois Class Members, that conduct took advantage of Plaintiff Fehrmann and Illinois Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Fehrmann and Illinois Class Members.

168. Had Plaintiff Fehrmann and Illinois Class Members known that the Class Vehicles suffer from the Master Brake Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

169. Plaintiff Fehrmann and Illinois Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Master Brake Defect. That is the reasonable and objective consumer expectation for motor vehicles.

170. As a result of Defendant's misconduct, Plaintiff Fehrmann and Illinois Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

171. Defendant's deceptive acts and practices were willful and knowing because Defendant knew that the braking system assemblies contained in the Class Vehicles were defective before it began selling the Class Vehicles and chose not to disclose the problem to consumers.

172. Defendant's violations of the ICFA proximately caused actual damage to Plaintiff Fehrmann and Illinois Class Members, including the diminished value of their Class Vehicles, the loss of the use of their vehicles during extended periods out of service, and the price premium they paid for vehicles they believed to be free of safety defects.

173. Pursuant to 815 ILCS 505/10a, Plaintiff Fehrmann and Illinois Class Members are entitled to recover actual damages, punitive damages, injunctive and other equitable relief, and their reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

**Breach of Express Warranty Pursuant to Mich. Comp. Laws § 440.2313**
**(Plaintiffs Mellinger and Solak on behalf of the Michigan Class)**

174. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

175. In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiffs Mellinger and Solak and Michigan Class Members with a New Vehicle Limited Warranty, under which it agreed to provide repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise,

vibrations, or other normal characteristics of the vehicle, within the first 36 months or 36,000 miles in service, whichever comes first.

176. Plaintiffs Mellinger and Solak and Michigan Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

177. Plaintiffs Mellinger and Solak and Michigan Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class Member by failing to repair the Master Brake Defect within a reasonable period of time under the vehicle's warranty as described herein.

178. As a result of said nonconformities, Plaintiffs Mellinger and Solak and Michigan Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

179. Plaintiffs Mellinger and Solak and Michigan Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

180. As a direct and proximate result of the failure of Defendant to comply with its obligations under the express warranties, Plaintiffs Mellinger and Solak and Michigan Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

**SEVENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**Pursuant to Mich. Comp. Laws § 440.2314**
**(Plaintiffs Mellinger and Solak on behalf of the Michigan Class)**

181. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

182. Defendant is a merchant with respect to motor vehicles.

183. The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiffs Mellinger and Solak and the Michigan Class Members.

184. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

185. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Master Brake Defect and thus were not in merchantable condition when Plaintiffs Mellinger and Solak and the Michigan Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

186. Defendant has breached the implied warranty of merchantability because the Class Vehicles, when sold or leased, would not pass without objection in the trade.

187. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

188. Additionally, as a result of the Master Brake Defect, Plaintiffs Mellinger and Solak and the Michigan Class Members were harmed and suffered actual damages.

189. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of Mich. Comp. Laws § 440.2314 and, as to leased Class Vehicles, Mich. Comp. Laws § 440.2862.

## EIGHTH CAUSE OF ACTION
**Violations of the Michigan Consumer Protection Act,**
**Mich. Comp. Laws § 445.901,** *et seq.*
**(Plaintiffs Mellinger and Solak on behalf of the Michigan Class)**

190. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

191. Plaintiffs Mellinger and Solak, Defendant, and each Michigan Class Member are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

192. Defendant's sale, lease, marketing, and servicing of the Class Vehicles constitutes "trade or commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

193. The Michigan Consumer Protection Act ("MCPA") prohibits, among other things: representing that goods have characteristics or benefits that they do not have, Mich. Comp. Laws § 445.903(1)(c); representing that goods are of a particular standard or quality when they are of another, Mich. Comp. Laws § 445.903(1)(e); failing to reveal a material fact the omission of which tends to mislead or deceive the consumer and which fact could not reasonably be known by the consumer, Mich. Comp. Laws § 445.903(1)(s); and failing to reveal facts that are material to the transaction in light of representations made in a positive manner, Mich. Comp. Laws § 445.903(1)(cc).

194. Defendant violated these provisions by knowingly concealing the Master Brake Defect.

195. The Master Brake Defect is a material fact that could not reasonably have been known by Plaintiffs Mellinger and Solak or by Michigan Class Members.

196. Defendant was under a duty to Plaintiffs Mellinger and Solak and Michigan Class Members to disclose the Master Brake Defect because:

(a) Defendant was in a superior position to know the true state of facts about the Master Brake Defect contained in the Class Vehicles;

(b) Plaintiffs Mellinger and Solak and Michigan Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased or leased the Class Vehicles;

(c) Defendant knew that Plaintiffs Mellinger and Solak and Michigan Class Members could not reasonably have been expected to learn about or discover the Master Brake Defect; and

(d) Defendant made partial disclosures about the quality and safety of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Master Brake Defect.

197. The facts concealed or not disclosed by Defendant to Plaintiffs Mellinger and Solak and Michigan Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

198. Plaintiffs Mellinger and Solak and Michigan Class Members relied on Defendant to disclose material information it knew, such as the Master Brake Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had Defendant disclosed this information.

199. Defendant's failure to disclose this information was misleading in a material respect because a reasonable consumer would have been misled by Defendant's conduct.

200. Defendant's deceptive acts and practices were consumer-oriented because they had a broad-range impact on consumers at large, affecting all owners and lessees of Class Vehicles.

201. By failing to disclose the Master Brake Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

202. Moreover, Defendant's intentional concealment of and failure to disclose the Master Brake Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiffs Mellinger and Solak and Michigan Class Members, that conduct took advantage of Plaintiffs Mellinger and Solak and Michigan Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiffs Mellinger and Solak and Michigan Class Members.

203. Had Plaintiffs Mellinger and Solak and Michigan Class Members known that the Class Vehicles suffer from the Master Brake Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

204. Plaintiffs Mellinger and Solak and Michigan Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Master Brake Defect. That is the reasonable and objective consumer expectation for motor vehicles.

205. As a result of Defendant's misconduct, Plaintiffs Mellinger and Solak and Michigan Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

206. Defendant's deceptive acts and practices were willful and knowing because Defendant knew that the braking system assemblies contained in the Class Vehicles were

defective before it began selling the Class Vehicles and chose not to disclose the problem to consumers.

207. Plaintiffs Mellinger and Solak and Michigan Class Members seek actual damages, together with injunctive relief, reasonable attorneys' fees, and costs.

**NINTH CAUSE OF ACTION**
**Breach of Express Warranty Pursuant to Ky. Rev. Stat. § 355.2-313**
**(Plaintiff Wise on behalf of the Kentucky Class)**

208. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

209. In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Wise and Kentucky Class Members with a New Vehicle Limited Warranty, under which it agreed to provide repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise, vibrations, or other normal characteristics of the vehicle, within the first 36 months or 36,000 miles in service, whichever comes first.

210. Plaintiff Wise and Kentucky Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

211. Plaintiff Wise and Kentucky Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class Member by failing to repair the Master Brake Defect within a reasonable period of time under the vehicle's warranty as described herein.

212. As a result of said nonconformities, Plaintiff Wise and Kentucky Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

213. Plaintiff Wise and Kentucky Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

214. As a direct and proximate result of the failure of Defendant to comply with its obligations under the express warranties, Plaintiff Wise and Kentucky Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## TENTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
**Pursuant to Ky. Rev. Stat. § 355.2-314**
**(Plaintiff Wise on behalf of the Kentucky Class)**

215. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

216. Defendant is a merchant with respect to motor vehicles.

217. The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Wise and the Kentucky Class Members.

218. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

219. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Master Brake Defect and thus were not in merchantable condition when Plaintiff Wise and the Kentucky Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

220. Defendant has breached the implied warranty of merchantability because the Class Vehicles, when sold or leased, would not pass without objection in the trade.

221. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

222. Additionally, as a result of the Master Brake Defect, Plaintiff Wise and the Kentucky Class Members were harmed and suffered actual damages.

223. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of Ky. Rev. Stat. § 355.2-314.

**ELEVENTH CAUSE OF ACTION**
**Violations of the Kentucky Consumer Protection Act,**
**Ky. Rev. Stat. § 367.110, *et seq.***
**(Plaintiff Wise on behalf of the Kentucky Class)**

224. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

225. Plaintiff Wise, Defendant, and each Kentucky Class Member are "persons" within the meaning of Ky. Rev. Stat. § 367.110(1).

226. Defendant's sale, lease, marketing, and servicing of the Class Vehicles constitutes "trade" and "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

227. The Kentucky Consumer Protection Act ("KCPA") declares unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. § 367.170(1). "Unfair" is defined by the statute to mean unconscionable. Ky. Rev. Stat. § 367.170(2).

228. Defendant engaged in unfair, false, misleading, and deceptive acts and practices by concealing the Master Brake Defect.

229. Defendant was under a duty to Plaintiff Wise and Kentucky Class Members to disclose the Master Brake Defect because:

(a) Defendant was in a superior position to know the true state of facts about the Master Brake Defect contained in the Class Vehicles;

(b) Plaintiff Wise and Kentucky Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased or leased the Class Vehicles;

(c) Defendant knew that Plaintiff Wise and Kentucky Class Members could not reasonably have been expected to learn about or discover the Master Brake Defect; and

(d) Defendant made partial disclosures about the quality and safety of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Master Brake Defect.

230. The facts concealed or not disclosed by Defendant to Plaintiff Wise and Kentucky Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

231. Plaintiff Wise and Kentucky Class Members relied on Defendant to disclose material information it knew, such as the Master Brake Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had Defendant disclosed this information.

232. Defendant's failure to disclose this information was misleading in a material respect because a reasonable consumer would have been misled by Defendant's conduct.

233. Defendant's deceptive acts and practices were consumer-oriented because they had a broad-range impact on consumers at large, affecting all owners and lessees of Class Vehicles.

234. By failing to disclose the Master Brake Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

235. Moreover, Defendant's intentional concealment of and failure to disclose the Master Brake Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiff Wise and Kentucky Class Members, that conduct took advantage of Plaintiff Wise and Kentucky Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Wise and Kentucky Class Members.

236. Had Plaintiff Wise and Kentucky Class Members known that the Class Vehicles suffer from the Master Brake Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

237. Plaintiff Wise and Kentucky Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Master Brake Defect. That is the reasonable and objective consumer expectation for motor vehicles.

238. As a result of Defendant's misconduct, Plaintiff Wise and Kentucky Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

239. Defendant's deceptive acts and practices were willful and knowing because Defendant knew that the braking system assemblies contained in the Class Vehicles were

defective before it began selling the Class Vehicles and chose not to disclose the problem to consumers.

240. Pursuant to Ky. Rev. Stat. § 367.220, Plaintiff Wise and Kentucky Class Members seek actual damages, punitive damages, injunctive and other equitable relief, and their reasonable attorneys' fees and costs.

**TWELFTH CAUSE OF ACTION**
**Breach of Express Warranty Pursuant to Ohio Rev. Code § 1302.26**
**(Plaintiff Worthington on behalf of the Ohio Class)**

241. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

242. In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Worthington and Ohio Class Members with a New Vehicle Limited Warranty, under which it agreed to provide repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise, vibrations, or other normal characteristics of the vehicle, within the first 36 months or 36,000 miles in service, whichever comes first.

243. Plaintiff Worthington and Ohio Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

244. Plaintiff Worthington and Ohio Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class Member by failing to repair the Master Brake Defect within a reasonable period of time under the vehicle's warranty as described herein.

245. As a result of said nonconformities, Plaintiff Worthington and Ohio Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

246. Plaintiff Worthington and Ohio Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

247. As a direct and proximate result of the failure of Defendant to comply with its obligations under the express warranties, Plaintiff Worthington and Ohio Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## THIRTEENTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
**Pursuant to Ohio Rev. Code § 1302.27**
**(Plaintiff Worthington on behalf of the Ohio Class)**

248. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

249. Defendant is a merchant with respect to motor vehicles.

250. The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Worthington and the Ohio Class Members.

251. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

252. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Master Brake Defect and thus were not in merchantable condition when Plaintiff Worthington and the Ohio Class Members purchased or

leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

253. Defendant has breached the implied warranty of merchantability because the Class Vehicles, when sold or leased, would not pass without objection in the trade.

254. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

255. Additionally, as a result of the Master Brake Defect, Plaintiff Worthington and the Ohio Class Members were harmed and suffered actual damages.

256. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of Ohio Rev. Code § 1302.27.

**FOURTEENTH CAUSE OF ACTION**
**Violations of the Ohio Consumer Sales Practices Act,**
**Ohio Rev. Code § 1345.01, *et seq.***
**(Plaintiff Worthington on behalf of the Ohio Class)**

257. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

258. Plaintiff Worthington and each Ohio Class Member is a "consumer" as defined in Ohio Rev. Code § 1345.01(D), and the purchase of each Class Vehicle is a "consumer transaction" as defined in Ohio Rev. Code § 1345.01(A).

259. Defendant is a "supplier" as defined in Ohio Rev. Code § 1345.01(C).

260. The Ohio Consumer Sales Practices Act ("OCSPA") prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with a consumer transaction. Ohio Rev. Code §§ 1345.02, 1345.03.

261. Defendant committed unfair and deceptive acts and practices by representing that the Class Vehicles had characteristics, uses, benefits, and qualities that they do not have; by representing that the Class Vehicles were of a particular standard, quality, and grade when they were of another; and by knowingly concealing, suppressing, and omitting the material fact of the Master Brake Defect, in violation of Ohio Rev. Code § 1345.02(B)(1) and (B)(2). In addition, Defendant's breach of its express warranty and the implied warranty of merchantability also constitute a violation of a the OCSPA.

262. The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendant in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA. These cases include, but are not limited to, the following: *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382); *State ex rel. Betty D. Montgomery v. Defendants Motor Co.* (OPIF #10002123); *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025); *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077); *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Oho App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388); *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347); *Mark J. Craw Defendants, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586); *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304) ("Failure by a supplier in connection with a consumer transaction to honor express warranties, constitutes deceptive acts and practices in violation of the Ohio Consumer Sales Practices Act"; "Where a supplier in connection with a consumer transaction knowingly takes advantage of the inability of the

consumer reasonably to protect his interest because of . . . ignorance . . . the supplier commits an unconscionable and practice in violation of the Ohio Consumer Sales Practices Act"; and "Where a supplier in connection with a consumer transaction knows at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction, the supplier commits an unconscionable act and practice in violation of the Ohio Consumer Sales Practices Act"); *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427); *Khouri v. Don Lewis* (OPIF #100001995); *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326) ) (Court found that "the failure of the Defendant, in connection with the Consumer transaction, to honor the expressed written warranties on the vehicle purchased by the Plaintiff constitutes a deceptive act and practice in violation of The Ohio Consumer Sales Practices Act, Section 1345.02(A), (B)(10) and 1345.03(A)."); *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); *Brown v. Spears* (OPIF #10000403) (breach of warranty constituted unfair or deceptive act or practice in violation of the OCSPA); *State ex rel. Brown v. Bud Fletcher Used Cars, Inc.* (OPIF #10000228) (Ohio Ct. C.P. Apr. 27, 1982); *State ex rel. Celebrezze v. Metro Toyota, Inc.* (OPIF #10001194); and *Shellhorn v. Kohler Chrysler-Plymouth, Inc.* (PIF Number 10001309).

263. Defendant was under a duty to Plaintiff Worthington and Ohio Class Members to disclose the Master Brake Defect because:

(a) Defendant was in a superior position to know the true state of facts about the Master Brake Defect contained in the Class Vehicles;

(b) Plaintiff Worthington and Ohio Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased or leased the Class Vehicles;

(c) Defendant knew that Plaintiff Worthington and Ohio Class Members could not reasonably have been expected to learn about or discover the Master Brake Defect; and

(d) Defendant made partial disclosures about the quality and safety of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Master Brake Defect.

264. The facts concealed or not disclosed by Defendant to Plaintiff Worthington and Ohio Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

265. Plaintiff Worthington and Ohio Class Members relied on Defendant to disclose material information it knew, such as the Master Brake Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had Defendant disclosed this information.

266. Defendant's failure to disclose this information was misleading in a material respect because a reasonable consumer would have been misled by Defendant's conduct.

267. Defendant's deceptive acts and practices were consumer-oriented because they had a broad-range impact on consumers at large, affecting all owners and lessees of Class Vehicles.

268. By failing to disclose the Master Brake Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

269. Moreover, Defendant's intentional concealment of and failure to disclose the Master Brake Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiff Worthington and Ohio Class Members, that conduct took advantage of Plaintiff Worthington and Ohio Class Members' lack of knowledge, ability, and experience to

a grossly unfair degree. Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Worthington and Ohio Class Members.

270. Had Plaintiff Worthington and Ohio Class Members known that the Class Vehicles suffer from the Master Brake Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

271. Plaintiff Worthington and Ohio Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Master Brake Defect. That is the reasonable and objective consumer expectation for motor vehicles.

272. As a result of Defendant's misconduct, Plaintiff Worthington and Ohio Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

273. Defendant's deceptive acts and practices were willful and knowing because Defendant knew that the braking system assemblies contained in the Class Vehicles were defective before it began selling the Class Vehicles and chose not to disclose the problem to consumers.

274. Pursuant to Ohio Rev. Code § 1345.09, Plaintiff Worthington and Ohio Class Members seek actual damages, rescission, injunctive relief, and their reasonable attorneys' fees and costs, and, to the extent available, treble damages and statutory damages.

**FIFTEENTH CAUSE OF ACTION**
**Breach of Express Warranty Pursuant to**
**Tex. Bus. & Com. Code § 2.313**
**(Plaintiff Jennis on behalf of the Texas Class)**

275. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

276. In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Jennis and Texas Class Members with a New Vehicle Limited Warranty, under which it agreed to provide repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise, vibrations, or other normal characteristics of the vehicle, within the first 36 months or 36,000 miles in service, whichever comes first.

277. Plaintiff Jennis and Texas Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

278. Plaintiff Jennis and Texas Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class Member by failing to repair the Master Brake Defect within a reasonable period of time under the vehicle's warranty as described herein.

279. As a result of said nonconformities, Plaintiff Jennis and Texas Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

280. Plaintiff Jennis and Texas Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

281. As a direct and proximate result of the failure of Defendant to comply with its obligations under the express warranties, Plaintiff Jennis and Texas Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

**<u>SIXTEENTH CAUSE OF ACTION</u>**
**Breach of Implied Warranty of Merchantability**
**Pursuant to Tex. Bus. & Com. Code § 2.314**
**(Plaintiff Jennis on behalf of the Texas Class)**

282. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

283. Defendant is a merchant with respect to motor vehicles.

284. The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Jennis and the Texas Class Members.

285. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

286. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Master Brake Defect and thus were not in merchantable condition when Plaintiff Jennis and the Texas Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

287. Defendant has breached the implied warranty of merchantability because the Class Vehicles, when sold or leased, would not pass without objection in the trade.

288. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

289. Additionally, as a result of the Master Brake Defect, Plaintiff Jennis and the Texas Class Members were harmed and suffered actual damages.

290. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of Tex. Bus. & Com. Code § 2.314.

**SEVENTEENTH CAUSE OF ACTION**
**Violations of the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq*.**
**(Plaintiff Jennis on behalf of the Texas Class)**

291. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

292. Plaintiff Jennis and each Texas Class Member is a "consumer" within the meaning of Tex. Bus. & Com. Code § 17.45(4), in that each sought or acquired by purchase or lease goods — namely, the Class Vehicles — for personal, family, or household use.

293. Defendant is a "person" within the meaning of Tex. Bus. & Com. Code § 17.45(3), and the Class Vehicles are "goods" within the meaning of Tex. Bus. & Com. Code § 17.45(1).

294. Defendant violated Tex. Bus. & Com. Code § 17.46(b) by, among other things: representing that the Class Vehicles had characteristics, uses, and benefits that they do not have, § 17.46(b)(5); representing that the Class Vehicles were of a particular standard, quality, or grade when they were of another, § 17.46(b)(7); and failing to disclose information concerning the Class Vehicles that was known at the time of the transaction, where such failure to disclose was intended to induce consumers into transactions they would not have entered had the information been disclosed, § 17.46(b)(24).

295. Defendant further violated Tex. Bus. & Com. Code § 17.50(a)(2) by breaching the express warranty and the implied warranty of merchantability.

296. Defendant's conduct was also unconscionable within the meaning of Tex. Bus. & Com. Code § 17.45(5) and actionable under § 17.50(a)(3), in that Defendant took advantage of the lack of knowledge, ability, experience, and capacity of Plaintiff Jennis and Texas Class Members to a grossly unfair degree by selling them vehicles with a concealed Master Break Defect.

297. Defendant knew of the Master Brake Defect at the time of the sale of the Class Vehicles, as alleged above, and intentionally failed to disclose it for the purpose of inducing Plaintiff Jennis and Texas Class Members into transactions they would not otherwise have entered.

298. Defendant was under a duty to Plaintiff Jennis and Texas Class Members to disclose the Master Brake Defect because:

(a) Defendant was in a superior position to know the true state of facts about the Master Brake Defect contained in the Class Vehicles;

(b) Plaintiff Jennis and Texas Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased or leased the Class Vehicles;

(c) Defendant knew that Plaintiff Jennis and Texas Class Members could not reasonably have been expected to learn about or discover the Master Brake Defect; and

(d) Defendant made partial disclosures about the quality and safety of the Class Vehicles without revealing the defective nature of the Class Vehicles and the Master Brake Defect.

299. The facts concealed or not disclosed by Defendant to Plaintiff Jennis and Texas Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

300. Plaintiff Jennis and Texas Class Members relied on Defendant to disclose material information it knew, such as the Master Brake Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had Defendant disclosed this information.

301. Defendant's failure to disclose this information was misleading in a material respect because a reasonable consumer would have been misled by Defendant's conduct.

302. Defendant's deceptive acts and practices were consumer-oriented because they had a broad-range impact on consumers at large, affecting all owners and lessees of Class Vehicles.

303. By failing to disclose the Master Brake Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

304. Moreover, Defendant's intentional concealment of and failure to disclose the Master Brake Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiff Jennis and Texas Class Members, that conduct took advantage of Plaintiff Jennis and Texas Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Jennis and Texas Class Members.

305. Had Plaintiff Jennis and Texas Class Members known that the Class Vehicles suffer from the Master Brake Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

306. Plaintiff Jennis and Texas Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Master Brake Defect. That is the reasonable and objective consumer expectation for motor vehicles.

307. As a result of Defendant's misconduct, Plaintiff Jennis and Texas Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

308. Defendant's deceptive acts and practices were willful and knowing because Defendant knew that the braking system assemblies contained in the Class Vehicles were defective before it began selling the Class Vehicles and chose not to disclose the problem to consumers.

309. Plaintiff Jennis relied to her detriment on Defendant's omissions and misrepresentations concerning the safety, quality, and reliability of the Class Vehicles in deciding to purchase the Jennis Vehicle.

310. As a producing cause of Defendant's conduct, Plaintiff Jennis and Texas Class Members suffered economic damages, including the diminished value of their Class Vehicles and the loss of use of their vehicles during extended periods out of service.

311. Plaintiff Jennis additionally suffered damages arising from Defendant's failure to provide a comparable loaner or replacement vehicle while the Jennis Vehicle was out of service, including the loss of use of a vehicle suited to her physical needs.

312. Because Defendant's conduct was committed knowingly and intentionally within the meaning of Tex. Bus. & Com. Code § 17.45(9) and (13), Plaintiff Jennis and Texas Class Members are entitled to recover up to three times the amount of their economic damages,

together with damages for mental anguish, court costs, and reasonable and necessary attorneys' fees pursuant to Tex. Bus. & Com. Code § 17.50(b) and (d).

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays for judgment against Defendant as follows:

a. An order certifying the proposed Classes, designating Plaintiffs as named representative of their respective Classes, and designating the undersigned as Class Counsel;

b. An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c. An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d. Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the Class Vehicles' Master Brake Defect with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e. A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f. Reasonable attorneys' fees and costs;

g. Pre-judgment and post-judgment interest, as provided by law;

h. Plaintiffs demand that Defendant perform a recall, and repair all Class Vehicles; and

i. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 6, 2026

Respectfully submitted,

By: *\/s/ Sergei Lemberg*

Sergei Lemberg
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
slemberg@lemberglaw.com

*Counsel for Plaintiffs*